UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X
                                                :

SANJAY TRIPATHY, et al.,              :

                         Plaintiffs,      :

                                  :      21 Civ. 5349 (VB)

            - against -         :

                                  :

FEUZ, et al.,                    :

                         Defendants.    :

                                  :

------------------------------------------------------------------------ X

 

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

 

LETITIA JAMES
Attorney General of the
State of New York
Attorney for Defendants
28 Liberty, 18th Floor
New York, New York 10005
(212) 416-8550

MICHAEL J. KEANE
Assistant Attorney General
of Counsel

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

Standard of Review ............................................................................................................. 6

ARGUMENT ........................................................................................................................ 7

I.    PLAINTIFFS' CLAIMS AGAINST DEFENDANTS WHO ARE NOT
ALLEGED TO BE PERSONALLY INVOLVED IN CONSTITUTIONAL OR
RLUIPA VIOLATIONS SHOULD BE DISMISSED ................................................ 7

II.  PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED
BECAUSE THE CLAIMS ARE MOOT OR UNRIPE AND OTHERWISE FAIL TO
STATE A CAUSE OF ACTION FOR FIRST OR FOURTEENTH AMENDMENT
AND RLUIPA VIOLATIONS ................................................................................... 10

      A.       Plaintiff's Injunctive Relief Claims Fail Or Are Moot Or Unripe .............. 10

      B.       Plaintiff's Free Exercise Claims Fail ........................................................ 12

      First Amendment Legal Standard ................................................................... 12

          1.    Plaintiff's Religious Beliefs Have Not Been And Will Not Be
Substantially Burdened By Participation In The SOCTP ........................... 14

          2.    Defendants' Actions, Justified By Legitimate Penological Interests, Are Rational ....15

      C.  Under RLUIPA, Defendants Have Not Substantially Burdened Plaintiff's
Exercise Of Core And Sincere Religious Beliefs .............................................. 16

          a.    DOCCS Policy Does Not Substantially Burden Plaintiff's Core Beliefs............... 16

          b.    DOCCS' Least Restrictive Policy Advances Its Compelling Interests.................. 17

III.   PLAINTIFF'S EQUAL PROTECTION RIGHTS HAVE NOT BEEN VIOLATED ........ 17

A. No Similarly Situated Group Is Treated More Favorably Than Plaintiff's ............................. 18

B. DOCCS Policies Withstand Rational Basis Review ................................................................. 18

IV.  PLAINTIFF'S CLAIMS FOR RETALIATION MUST BE DISMISSED……………20

V.  PLAINTIFF'S CLAIMS MAY BE DISMISSED FOR FAILURE TO EXHAUST
   ADMINISTRATIVE REMEDIES  ........................................................................................20

VI.  DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY .....................................24

CONCLUSION................................................................................................................................25

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Abdallah v. Ragner,*
No. 12-CV-8840, 2013 WL 7118083 (S.D.N.Y. Nov. 22, 2013)............................20

*Adams v. Annucci,*
2018 WL 4608216 (S.D.N.Y. Sept. 25, 2018).........................................................15

*Adkins v. Kaspar,*
393 F. 3d 559 (5th Cir. 2004) .........................................................................16, 18

*Allah v. Adams,*
2021 WL 5707380, No. 16-CV-6596 (W.D.N.Y. Dec. 2, 2021)............................23

*Allen v. WestPoint-Pepperell, Inc.,*
945 F.2d 40 (2d Cir. 1991).....................................................................................7

*Amaker v. Lee,*
No. 13-cv-5292(NSR), 2019 WL 1978612 (S.D.N.Y. May 3, 2019)....................19

*Anderson v. Creighton,*
483 U.S. 635 (1987)............................................................................................24

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011)............................................................................................24

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...................................................................................... 6, 8-9

*Auerbach v. Board of Education,*
136 F.3d 104 (2d Cir. 1998).................................................................................11

*Babbitt v. United Farm Workers National Union,*
442 U.S. 289 (1979)............................................................................................11

*Barnes v. Furman,*
629 F. App'x (2d Cir. 2015) .................................................................................12

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..............................................................................................6

*Benjamin v. Coughlin,*
905 F. 2d 571 (2d Cir. 1990)................................................................................17

*Berkley v. Ware,*
No. 16 Civ. 1326, 2018 WL 3736791 (N.D.N.Y. Jul. 6, 2018)............................22

*Beto v. Cruz,*
    405 U.S. 319 (1972)........................................................................................................18

*Booth v. Churner,*
    532 U.S. 731 (2001)................................................................................................ 20-21

*Bowie v. Woodruff,*
    No. 9:18-CV-0266 (BKS/ML), 2019 WL 7606078 (N.D.N.Y. Sept. 20, 2019) ....................22

*Calcutti v. SBU, Inc.,*
    224 F. Supp. 2d 691 (S.D.N.Y. 2002)......................................................................7

*City of Cleburne v. Cleburne Living Center, Inc.,*
    473 U.S. 432 (1985)....................................................................................................17

*Civil Liberties for Urban Believers v. City of Chicago,*
    342 F. 3d 752 (7th Cir. 2003) ...............................................................................16

*Cuocco v. Moritsugu,*
    222 F. 3d 99 (2d Cir. 2000)......................................................................................19

*Cutter v. Wilkinson,*
    125 S. Ct. 2113 (2005)..............................................................................................17

*Dabney v. Pegano,*
    604 F. App'x 1 (2d Cir. 2015) ................................................................................20

*Dawes v. Walker,*
    239 F.3d 489 (2d Cir. 2001)....................................................................................23

*Doe v. Annucci,*
    No. 14-CV-2953, 2015 U.S. Dist. LEXIS 91861 (S.D.N.Y. July 15, 2015) ............................8

*Edwards v. Goord,*
    362 Fed. App'x 195 (2d Cir. 2010)........................................................................15

*Etuk v. Slattery,*
    936 F.2d 1433 (2d Cir. 1991)....................................................................................6

*Ex Parte Young,*
    209 U.S. 123 (1908)..................................................................................................10

*Farid v. Ellen,*
    593 F.3d 233 (2d Cir. 2010)......................................................................................8

*Farrell v. Burke,*
    449 F.3d 470 (2d Cir. 2006)......................................................................................8

*Feliz v. Johnson*,
  9:17-CV-1294 (DNH/ATB), 2019 WL 3491232, at *14 (N.D.N.Y. Aug. 1,
  2020) ..................................................................................................................22

*Ford v. McGinnis*,
  352 F.3d 582 (2d Cir.2003)..................................................................................12

*Ford v. Smith*,
  No. 9:12–CV–1109, 2014 WL 652933 (N.D.N.Y. Feb. 19, 2014)........................................22

*General Media Communication, Inc v. Cohen*,
  131 F. 3d 273 (2d Cir. 1997) cert. denied, 524 U.S. 951 (1998) ............................................18

*Giano v. Goord*,
  54 F. 3d 1057 ......................................................................................................19

*Guillory v. Cuomo*,
  616 Fed. Appx. 12 (2d Cir. 2015) ........................................................................9

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)..............................................................................................24

*Hayden v. Paterson*,
  594 F.3d 150 (2d Cir. 2010)................................................................................6

*Hicks v. Adams*,
  692 F. App'x 647 (2d Cir. 2017) .........................................................................20

*Hirsch v. Arthur Andersen & Co., Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995)..................................................................................7

*Holland v. Goord*,
  758 F. 3d 215 (2d Cir. 2014)................................................................................12

*High v. Switz,*
  2018 WL 3736794, at *4 (N.D.N.Y. Jul. 9, 2018).................................................22

*Inside Connect, Inc. v. Fischer*,
  2014 WL 2933221, No. 13-CV-1138 (S.D.N.Y. June 30, 2014) .............................10

*Johnson v. Newburgh Enlarged Sch. Dist.*,
  239 F.3d 246 (2d Cir. 2001)................................................................................24

*Kern v. Joyce*,
  857 Fed. App'x 691 (2d Cir. 2021)........................................................................7

*Khudan v. Lee*,
  2015 WL 5544316, No. 12-CV-8147 (S.D.N.Y. Sept. 17, 2015) ..........................20

*Krull v. Annucci*,
    2022 WL 44775, No. 21-CV-03395 (S.D.N.Y. Jan. 5, 2022) .................................................14

*Krull v. Oey*,
    805 F. App'x 73 (2d Cir. 2020) .................................................................................................13

*Krull v. Oey*,
    805 Fed. Appx. 73 (2d. Cir. 2020) ................................................................................... 11, 13-14

*Lando v. Annucci*,
    2021 WL 1131475, No. 18-CV-1472 (Northern District of New York, March
    24, 2021) ....................................................................................................................................11

*Locke v. Davey*,
    540 U.S. 712 (2004).....................................................................................................................18

*Lopez v. Cipolini*,
    136 F. Supp. 3d 570 (S.D.N.Y. 2015)................................................................................... 20-21

*Malley v. Briggs*,
    475 U.S. 335 (1986).....................................................................................................................24

*McChesney v. Hogan*,
    2010 WL 1027443, Nos. 08-CV-1186, 08-CV-1290 (N.D.N.Y. Feb 26, 2010) ....................15

*McKune v. Lile*,
    536 U.S. 24 (2002)................................................................................................................ 13-15

*Midrash Sephardi, Inc. v. Town of Surfside*,
    366 F. 3d 1214 (11th Cir. 2005) .................................................................................................16

*Morales v. Mackalm*,
    278 F.3d 126 (2d Cir. 2002)........................................................................................................23

*Murphy v. New Milford Zoning Commission*,
    402 F. 3d 342 (2d Cir. 2005).......................................................................................................16

*National Organization for Marriage, Inc. v. Walsh*,
    714 F.3d 682 (2d Cir. 2013)........................................................................................................11

*Nordlinger v. Hahn*
    505 U.S. 1 (1992).........................................................................................................................17

*O'Lone v. Estate of Shabazz*,
    482 U.S. 342 (1987)............................................................................................................... 12-13

*Overton v. Bazzetta*,
    539 U.S. 126 (2003).....................................................................................................................13

*Parris v. New York State Dep't Corr. Servs.*,
  947 F.Supp.2d 354 (S.D.N.Y. 2013)..............................................................21

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v.*
  *Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013).............................................................................6

*People v. Tripathy*,
  187 A.D.3d 515 (1st Dep't 2020) , leave to appeal denied, 36 N.Y.3d 1101 (2021)......................4

*Price v. Johnson*,
  334 U.S. 266 (1948).........................................................................................12

*Reynolds v. Goord*,
  2000 U.S. Dist. LEXIS 2140, No. 98 Civ. 6722 (DLC), 2000 WL 235278
  (S.D.N.Y. Mar. 1, 2000) ....................................................................................9

*Ross v. Blake*,
  ____ U.S. ____, 136 S.Ct. 1850 (2016)................................................... 20-21

*Salahuddin v. Goord*,
  467 F.3d 263 (2d Cir. 2006)..................................................................... 8, 12-13

*Schnall v. Marine Midland Bank*,
  225 F.3d 263 (2d Cir. 2000)...............................................................................7

*Scott v. Coughlin*,
  344 F.3d 282 (2d Cir. 2003)............................................................................23

*Smith v. Lioidice*,
  No. 17-cv-7028 (NSR), 2020 WL 1033644 (S.D.N.Y. Mar. 2, 2020) ..................22

*Spavone v. N.Y. Dep't of Corr. Servs.*,
  719 F.3d 123 (2d Cir. 2013)..............................................................................9

*Spiteri v. Camacho*,
  622 F. App'x 9 (2d. Cir. 2015) .........................................................................19

*Spiteri v. Russo*,
  No. 12-CV-2780, 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2012) ..........................19

*Turner v. Safley*,
  483 U.S. 78 (1987)..................................................................................... 12-13

*Vacco v. Quill*,
  521 U.S (1997)................................................................................................19

vii

*Vann v. Fischer*,
    2014 U.S. Dist. LEXIS 118247 (S.D.N.Y. Aug. 25, 2014) ...................................13

*Victory v. Pataki*,
    814 F.3d 47 (2d Cir. 2016)...................................................................................9

*Washington v. McCoy*,
    816 Fed. Appx. 570 (2d Cir. 2020) .....................................................................8

*Weinstein v. Albright*,
    261 F. 3d 127 (2d Cir. 2001)........................................................................ 18-19

*Westchester Day School v. Village of Mamoroneck*,
    386 F. 3d 183 (2d Cir. 2004)..............................................................................16

*Williams v. King*,
    56 F. Supp. 3d 308 (S.D.N.Y. 2014)...................................................................24

*Woodford v. Ngo*,
    548 U.S. 81 (2006) ...................................................................................... 20-21

*Wright v. Smith*,
    21 F.3d 496 (2d Cir. 1994)..................................................................................9

## CONSTITUTIONS

First Amendment ....................................................................................... passim

Fifth Amendment ...................................................................................... 13-15

FOURTEENTH AMENDMENT ...............................................................10, 17, 19

## FEDERAL STATUTES

42 U.S.C.
    § 2000cc-5 (7) (A) .........................................................................................15

Criminal Sexual Act...............................................................................................3

First and Fourteenth Amendments, and under the Religious Land Use and
    Institutionalized Persons Act .............................................................................1

Prison Litigation Reform Act, 42 U.S.C.
    § 1997e..............................................................................................................19

Sex Offender Management and Treatment Act ......................................................2

Sex Offender Registration Act................................................................................2

SORA ......................................................................................................................... 13-14

**STATE STATUTES**

N.Y. Corr. Law
   § 168, et seq. ........................................................................................................14

**STATE REGULATIONS**

N Y. Comp. Codes R. & Regs.
   § 701 et seq. ..........................................................................................................20

**RULES**

Fed. R. Civ. P. 12 (b) (1)..............................................................................................6-7

Fed. R. Civ. P. 12 (b) (1) and (6) ..................................................................................1

Fed. R. Civ. P. 12(b) (6)................................................................................................6

**MISCELLANEOUS AUTHORITIES**

146 Cong. Rec. S7776 (July 27, 2000) .......................................................................16

DOCCS SOCTP, https://doccs.ny.gov/sex-offender-counseling-and-treatment-
   program-soctp .....................................................................................................4

N. Y. State DOCCS Inmate Lookup, for Sanjay Tripathy, 18-R-1673,
   http://nysdoccslookup.doccs.ny.gov .....................................................................3

Rebecca Rosenberg, "Tech Exec Gets 7 Years For Brutal Attack On Hooker,"
   *New York Post*, July 11, 2018 ...............................................................................3

Equal Protection Clause.................................................................................. 3, 17-18, 25

36 N.Y.3d 1101 (2021) .................................................................................................4

§ 1983............................................................................................................... passim

Article III ......................................................................................................................11

Fifth Amendment's Self-incrimination Clause ............................................................13

§ 1997e(a) ....................................................................................................................19

## PRELIMINARY STATEMENT

Defendants, the State of New York, Anthony Annucci, Acting Commissioner of New York State Department of Corrections and Community Supervision ("DOCCS"), Jeff McCoy, DOCCS Deputy of Programs, Brian McCallister, DOCCS SOCTP Director, Edward Burnett, Superintendent of DOCCS' Fishkill Correctional Facility ("Fishkill"), Jacqueline Reid, Sex Offender Rehabilitation Counselor ("SORC") at Fishkill, Luis Gonzalez, Assistant Deputy Superintendent of Programs at Fishkill, John Wood, Deputy Superintendent of Programs at Fishkill, Ryan Brotz, SOCTP Psychologist at DOCCS' Collins Correctional Facility ("Collins"), Michelle Harrington, Director of the New York State Office of Sex Offender Management, Tina Stanford, Chair, New York State Board of Parole, Andrew Cuomo, former Governor of the State of New York, and Kathy Hochul, Governor of the State of New York (collectively, "Defendants"), respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12 (b) (1) and (6), to dismiss the Complaint ("Complaint"), filed June 17, 2021.

Plaintiff Sanjay Tripathy ("Plaintiff"), a convicted sex offender incarcerated at Fishkill when he filed this lawsuit, but who was later transferred to Collins, where he is now incarcerated, complains that Defendants may violate his rights under the First and Fourteenth Amendments, and under the Religious Land Use and Institutionalized Persons Act ("RLUIPA), by allegedly requiring him to admit guilt for his crimes in order to participate in DOCCS' Sex Offender Counseling and Treatment Program ("SOCTP").

Specifically, Plaintiff, who professes to practice the "Hindu … Religion" and, as such, adheres to "core and sincerely held religious beliefs" (Complaint, ¶7, ECF #1) that he may "neither lie [nor] provide any untrue facts" (proposed Amended Complaint, ¶1, ECF #40), alleges in his Complaint (and in what purports to be a "supplement" adding Defendants to that Complaint), that

1

Defendants' SOCTP may violate his religious rights.  The Complaint asserts that, as a prerequisite to participating in a mandatory DOCCS sex offender program, he allegedly must, against his religious beliefs, admit to a lie – that he is guilty of the crimes for which he is presently incarcerated.  Plaintiff alleges that if he adheres to his religious beliefs and chooses not to participate in the SOCTP, he will not be eligible for "benefits" like good time credits for early release from his sentence, and, upon the conclusion of his term of incarceration, will not be eligible for potential favorable treatment by the New York State Board of Examiners for Sex Offenders in connection with his Sex Offender Registration Act ("SORA") designation, his Sex Offender Management and Treatment Act ("SOMTA") requirements, and any potential civil commitment. See Complaint, generally.  Plaintiff's claims should be dismissed, however, as the record on this motion establishes that SOCTP participation does *not* require admitting his crimes, but only discussing what led to his convictions.

Plaintiff's claims should be dismissed in their entirety.  Plaintiff is entitled to neither the nominal damages he seeks nor the injunctive relief he has been denied twice already.  First, Plaintiff's claims should be dismissed as to Defendants who are not personally involved in the policymaking or the implementation of SOCTP.  Second, Plaintiff's claims for injunctive relief should be dismissed as unripe, as the Complaint and the exhibits attached thereto establish that the SOCTP has not, to date, compelled, and does not in the future, imminently threaten to compel Plaintiff to admit his guilt and violate his core or sincerely held religious beliefs.  Third, and for the same reasons, Plaintiff's claims for damages and injunctive relief should be dismissed for failure to state a claim upon which relief can be granted: Defendants' conduct in allegedly denying him religious exercise (a) did not substantially burden his sincerely-held core religious beliefs or were concededly justified by legitimate penological interests advanced through the least restrictive

means, so as to violate the First Amendment or RLUIPA; (b) did not amount to discrimination so as to violate the Equal Protection Clause; and (c) did not amount to retaliation.  Fourth, Plaintiffs' claims may be dismissed at least in part for failure to exhaust administrative remedies, as this record shows that no grievance against Defendants McCallister and Brotz (added as Defendants on January 28, 2022) was filed (and could not have been filed against Defendant Brotz) prior to the filing of this action on June 21, 2021.   Finally, Plaintiff's claims for damages – even if only for nominal damages – must be dismissed because Defendants are entitled to qualified immunity, and the claims fail to allege conduct that violated clearly established law of which a reasonable official would have known.

## **STATEMENT OF FACTS**

Plaintiff was committed to DOCCS on July 19, 2018, to serve a 7-year determinate sentence, following his convictions, after a jury trial in New York County, for Criminal Sexual Act in the 1st Degree, a B felony, Sexual Abuse in the 1st degree, a D felony, Strangulation in the 2nd Degree, a D felony, and Assault in the 2nd Degree, a D felony.  See N. Y. State DOCCS Inmate Lookup, for Sanjay Tripathy, 18-R-1673, http://nysdoccslookup.doccs.ny.gov, last accessed April 2, 2022.

Plaintiff admits that he was convicted of such crimes,[1] and that his appeals of those convictions have been denied by the New York State courts, although he claims he is seeking review of the State proceedings in the Supreme Court of the United States.  Complaint, ¶5 (a) - (e)

---

[1] Plaintiff testified in his own defense at his criminal trial, and stated on the record at his sentencing that he regretted what happened and the pain he had caused.  See Rebecca Rosenberg, "Tech Exec Gets 7 Years For Brutal Attack On Hooker," *New York Post*, July 11, 2018 (quoting Plaintiff in open court, "'I wish I could turn back the clock, unfortunately, I can't …I would like to sincerely apologize [to the victim], who I caused a lot of pain and suffering.'" Plaintiff had no objection grounded in his religious beliefs for these public statements in open court.

(ECF #1).  See also People v. Tripathy, 187 A.D.3d 515 (1st Dep't 2020), leave to appeal denied, 36 N.Y.3d 1101 (2021).

DOCCS offers individuals convicted of crimes like Plaintiff's the opportunity to participate in its SOCTP.  See "Overview," DOCCS SOCTP, https://doccs.ny.gov/sex-offender-counseling-and-treatment-program-soctp.  Plaintiff complains that participation in the program would force him to admit his guilt, although he maintains his innocence, and thus force him to lie, which is forbidden by his religion, abridging his Free Exercise, RLUIPA, and Equal Protection rights.

As of the filing of the Complaint, Plaintiff had not yet participated in the SOCTP, at Fishkill or elsewhere, including Collins.  The Complaint does not allege that DOCCS has required him to lie or to admit guilt, or otherwise has violated his rights to date.  See Complaint, generally.

Plaintiff's claims are that his rights *may be* violated should he participate in the SOCTP.[2]

The record incorporated in the Complaint itself, however, documents that Plaintiff is not required to admit his guilt, as he alleges.  Plaintiff's engagement in DOCCS' administrative grievance process revealed (and Plaintiff attaches the proof as exhibits to and now incorporated into his Complaint) that the SOCTP does not require Plaintiff to lie, but rather, as stated in response to Plaintiff's March 29, 2021 grievance about participation in the SOCTP, the Superintendent of Fishkill, Defendant Burnett, informed Plaintiff on April 15, 2021, that, "in accordance with CORC [Central Office Review Committee] decision SHG 29772-15,":

> Grievant is required to openly and honestly discuss the behavior that resulted in his incarceration and referral to the SOCTP, demonstrate an acceptance of responsibility for the conduct that resulted in his criminal conviction and demonstrate an understanding of the sexual offending behavior and cycle of abuse.  He is not required to admit the commission of any Penal Law offense, nor describe his offending behavior in a manner consistent with a specific Penal Law definition.

---

[2] Upon information and belief, Plaintiff is now participating in the SOCTP at Collins.

Superintendent's Response to Fishkill Grievance ECF #0079-21, attached to Complaint (ECF #1), p. 46. Plaintiff claims that he filed an appeal to CORC of the Superintendent's Response on April 18, 2021, but did not receive a response as of the filing of the Complaint on June 17, 2021.

At some point after filing the Complaint, Plaintiff was transferred from Fishkill to Collins. As of the filing of the Complaint on June 17, 2021, therefore, no grievance had been filed against any DOCCS official involved in the SOCTP at Collins, including Defendant Brotz, at Fishkill.

Defendants Burnett, Reid, Wood, Feuz, and Gonzalez are at Fishkill, and are not involved in any actions taken at Collins as to Plaintiff's participation in the SOCTP. The Complaint conclusorily alleges these Defendants' involvement, asserting that Defendant Burnett oversees the program (Complaint, ¶8(b)), Defendant Reid oversees the program (Complaint, ¶8(a)), Defendant Wood oversees the program (Complaint, ¶8(b)), Defendant Feuz oversees the program (Complaint, ¶8(a)), and Defendant Gonzalez oversees the program (Complaint, ¶8(b)). As to the involvement of other individual Defendants named in the Complaint (or its "supplement"), Plaintiff alleges that Defendant McCallister is responsible for the SOCTP, and "answers to" Defendant McCoy who then "answers to" Defendant Annucci, see Proposed Amended Complaint, ¶5 (ECF #40), who both oversee the program. Complaint, ¶8(c) (ECF #1).

The Proposed Amended Complaint alleges that Defendant Brotz, a psychologist at Collins, is responsible for decision-making for the SOCTP at Collins.

The Complaint does not allege that Defendant Stanford has taken or is about to take any action in connection with Plaintiff. Likewise, the Complaint does not allege that Defendant Harrington has taken or is about to take any action in connection with Plaintiff.

The Complaint names as a Defendant former Governor Andrew Cuomo, but does not set forth any basis for his personal involvement in any action in connection with Plaintiff, except to

allege that the Governor, in his official capacity, should have modified or rescinded the SOCTP by Executive Order. Complaint, Complaint, ¶8(d) (ECF #1). Defendant Governor Hochul would replace Governor Cuomo to the extent that Plaintiff alleges that the Governor, in her official capacity, should modify or rescind the SOCTP by Executive Order.

### **Standard of Review**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (6), a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Courts follow a "two pronged approach" to determine plausibility. Iqbal, 556 U.S. at 678. "First, although a complaint need not include detailed factual allegations, it must provide 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 717 (2d Cir. 2013) (quoting Iqbal, 556 U.S. at 678). Second, "a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 679). If the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [his or her] complaint must be dismissed." Twombly, 550 U.S. at 570.

At the same time, a claim must be dismissed pursuant to Fed. R. Civ. P. 12 (b) (1) where it is moot or unripe, requiring a determination that a claim "remain alive throughout the course of the proceedings." Etuk v. Slattery, 936 F.2d 1433, 1441 (2d Cir. 1991).

When considering a motion to dismiss under F.R.C.P. 12(b) (1) or (6), the court may consider "documents attached to the complaint or incorporated by reference." Schnall v. Marine Midland Bank, 225 F.3d 263, 266 (2d Cir. 2000).  Furthermore, the court "may take judicial notice of records and reports of administrative bodies, items in the record of the case, matters of general public record, and copies of documents attached to the complaint." Calcutti v. SBU, Inc., 224 F. Supp. 2d 691, 696 (S.D.N.Y. 2002) (citation, quotations, and brackets omitted). See also Kern v. Joyce, 857 Fed. App'x 691, 693 (2d Cir. 2021); (holding that consideration of matters subject to judicial notice does not require conversion of dismissal motion to one for summary judgment). See Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (on motion to dismiss, district court considers "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to …matters of which judicial notice may be taken"); Hirsch v. Arthur Andersen & Co., Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1095 (2d Cir. 1995) (affirming dismissal of a complaint where plaintiff's "attenuated allegations" were "contradicted ... by facts of which [the Court] may take judicial notice").

Here, in addition to the documents already made a part of the record as indicated by the docket sheet, the Court may take judicial notice of: (1) the documents referred to in or attached to the Complaint; (2) the DOCCS Inmate Information; and (3) the State criminal court proceedings.

**ARGUMENT**

I.    **PLAINTIFFS' CLAIMS AGAINST DEFENDANTS WHO ARE NOT ALLEGED TO BE PERSONALLY INVOLVED IN CONSTITUTIONAL OR RLUIPA VIOLATIONS SHOULD BE DISMISSED**

The claims for damages and injunctive relief under § 1983 against several Defendants should be dismissed because Plaintiff fails to allege their personal involvement.  It is "well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983." Doe v. Annucci, No. 14-CV-2953, 2015 U.S. Dist. LEXIS 91861, at *46 (S.D.N.Y. July 15, 2015) (quoting Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (quoting Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006))).  Further, "[b]ecause vicarious liability is inapplicable to… § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.  Plaintiff asserts claims against 13 Defendants, but fails to allege, except in conclusory generalities, the personal involvement of any in constitutional or statutory violations.

First, Plaintiff's claims against five Defendants, Fishkill officials Burnett, Reid, Wood, Feuz, and Gonzalez, are, at best, conclusory, as there are no allegations that these Defendants were involved in any conduct that violated Plaintiff's rights or injured him in any way.  There are no allegations that these Defendants were involved in statewide policymaking in connection with the SOCTP or are involved at this time with any current or prospective programming, including the SOCTP, that Plaintiff may engage in or be engaged in, at Collins.  Nothing happened at Fishkill that would entitle Plaintiff to money damages – even nominal damages– as he was not compelled to do anything.  As to the claims for prospective relief, "'[i]n this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'"  See Washington v. McCoy, 816 Fed. Appx. 570 (2d Cir. 2020), citing Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006).  Claims against these five Defendants should be dismissed.

In addition, claims against Defendants Governor Hochul and former Governor Cuomo must also be dismissed for failure to allege their personal involvement, as a plaintiff must point to something more than a *respondeat superior* connection between the alleged unlawful conduct of a subordinate and the executive official.  The Governor is not, *ex officio*, liable for the conduct of

all State officials or the implementation of all State policies.  Specific allegations of personal involvement are required to sustain any claim against these Defendants.  See Victory v. Pataki, 814 F.3d 47 (2d Cir. 2016); Guillory v. Cuomo, 616 Fed. Appx. 12 (2d Cir. 2015).  There is also no allegation that the Governor's Office has any role in the work of the SOCTP, or that injunctive relief against the Governor is needed to afford Plaintiff any relief to which he may be entitled.

        Likewise, claims against Defendants Stanford and Harrington fail for the same reason.  These Defendants are named *ex officio*, but are not alleged to be involved at all, except by the speculative implication that at some future date, they (or their agencies or offices) may be required to make recommendations about Plaintiff's status as a sex offender released from prison.  See id.; Jackson v. Stanford, 2021 WL 3781837, No. 16-CV-9702 (S.D.N.Y. Aug. 19, 2021) (dismissing claims where there were no allegations to support the inference that defendant was involved).  These Defendants are not alleged to have any role in the supervision of individuals incarcerated in DOCCS facilities.

        Finally, as to the personal involvement of the three other Defendants – Annucci, McCoy and McCallister – the Complaint's allegations are similarly insufficient.  While arguably one or more of these Defendants could potentially be involved in the implementation of the SOCTP policy Statewide, Plaintiff's allegations are insufficient to support their involvement in connection with any constitutional or statutory claim that Plaintiff may assert here.  It is clear that "[b]ecause vicarious liability is inapplicable to… § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676; Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); see also Spavone v. N.Y. Dep't of Corr. Servs., 719 F.3d 123, 135 (2d Cir. 2013).   "Liability may not be premised on the respondeat superior or vicarious liability doctrines" and "[on] his connection to the events through

links in the chain of command."  Reynolds v. Goord, 2000 U.S. Dist. LEXIS 2140, No. 98 Civ.

6722 (DLC), 2000 WL 235278, at *7 (S.D.N.Y. Mar. 1, 2000).

Plaintiff's claims for money damages against Defendants should be dismissed for lack of

personal involvement.

## II. PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED BECAUSE THE CLAIMS ARE MOOT OR UNRIPE AND OTHERWISE FAIL TO STATE A CAUSE OF ACTION FOR FIRST OR FOURTEENTH AMENDMENT AND RLUIPA VIOLATIONS

### A. Plaintiff's Injunctive Relief Claims Fail Or Are Moot Or Unripe

Plaintiff's claims for injunctive relief against Defendant State officials in their official

capacities should be dismissed.  To the extent that he claims participation in the SOCTP will force

him to lie – and violate his religious beliefs – that claim fails, as, upon information and belief, he

is participating in the program at Collins and has not been forced to violate his religious tenets.  In

any event, there is no allegation showing that Plaintiff's claim that he will be forced to violate his

religious tenets goes beyond mere speculation.  In this case, injunctive relief would have no basis.

See Ex Parte Young, 209 U.S. 123 (1908) (to proceed, a claim for injunctive relief must allege an

ongoing violation of federal law for which prospective relief is sought); Inside Connect, Inc. v.

Fischer, 2014 WL 2933221 at *7, No. 13-CV-1138  (S.D.N.Y. June 30, 2014) (injunctive and

declaratory relief not available when defendants' policy was demonstrated not to pose the threat

to rights that plaintiff alleged in case where newspapers that allegedly would not be delivered by

DOCCS were, in fact, delivered).

To the extent that injunctive relief claims are directed at Fishkill Defendants, such claims

are moot, as Plaintiff is gone from that facility.  Moreover, to the extent that he claims as to other

Defendants that the outcome of his participation in the program may have an adverse effect on him

because of his religious beliefs, his claims are unripe.[3]  Such claims for injunctive relief are based

upon the unfounded speculation that participation in the SOCTP will in the future adversely affect

his status upon release unless he renounces his religious tenets.  But he does not allege that he has

reached a point at which he has been compelled by DOCCS to violate his beliefs, or that he has

suffered or will likely suffer any adverse consequences for participating as he has to date.  In this

case, injunctive relief would be premature.  As another federal district court held in a similar case,

Lando v. Annucci, 2021 WL 1131475, No. 18-CV-1472 (Northern District of New York, March

24, 2021), the injunctive relief claims, "as currently pled," were "not ripe for review. Ripeness is

intended to avoid the 'premature adjudication' of abstract disagreements," citing National

Organization for Marriage, Inc. v. Walsh, 714 F.3d 682, 687 (2d Cir. 2013).  At this point, and as

pleaded, Plaintiff's claims present at best only a hypothetical.  "To be justiciable, a cause of action

must be ripe – it must present a real, substantial controversy, not a mere hypothetical question."

Id.  The Complaint fails to present sufficient non-hypothetical facts upon which the Court could

apply the law.  See Babbitt v. United Farm Workers National Union, 442 U.S. 289, 298 (1979).

As the Second Circuit held in Auerbach v. Board of Education, 136 F.3d 104, 108-09 (2d Cir.

1998), "[w]hen the events alleged in a plaintiff's cause of action have not yet occurred, a federal

court is precluded from exercising subject matter jurisdiction because a real case or controversy

does not exist for purposes of Article III."  On the record on this motion, there is not yet a

justiciable case or controversy.  See, e. g., Krull v. Oey, 805 Fed. Appx. 73 (2d. Cir. 2020).

Plaintiff's injunctive relief claims should be dismissed as moot or unripe, or baseless, as

set forth below.

---

[3]  This Court denied Plaintiff's motion for preliminary injunctive relief on June 30, 2021 and his renewed motion for
the same relief on September 14, 2021 on grounds that he did not establish a likelihood of success on the merits or
demonstrate irreparable harm if such an injunction did not issue.  See ECF #3; ECF #26.

### B.  **Plaintiff's Free Exercise Claims Fail**

Plaintiff's First Amendment free exercise claims should be dismissed on several grounds. First, even assuming that Plaintiff holds sincere beliefs, he has not alleged that those beliefs were, in fact, "substantially burdened." Second, even if Plaintiff's beliefs were substantially burdened, the allegations of the Complaint itself show that Defendants' actions were both rational and justified by legitimate penological interests.  Finally, even if the Court could deem Plaintiff's allegations to have plausibly alleged any claim, Plaintiff's monetary damages claims must be dismissed as against Defendants whose personal involvement Plaintiff has failed to allege.

**First Amendment Legal Standard**

While prisoners "do not abandon their constitutional rights at the prison door," courts recognize that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Salahuddin v. Goord, 467 F.3d 263, 274 (2d Cir.2006) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (quoting Price v. Johnson, 334 U.S. 266, 285 (1948))).  Accordingly, "[t]o prevail on a First Amendment claim, a plaintiff must show that he has a sincerely held religious belief, that it was *substantially* burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest." Barnes v. Furman, 629 F. App'x (2d Cir. 2015) (emphasis added) (citing Holland v. Goord, 758 F. 3d 215, 220-23 (2d Cir. 2014); Ford v. McGinnis, 352 F.3d 582, 588-94 (2d Cir.2003).  Moreover, not every burden is a substantial burden.  See Gill v. DeFrank, 2000 WL 897152, at *1, No. 98-CV-7851 (S.D.N.Y. July 6, 2000), aff'd 8 Fed. App'x 35 (2d Cir. 2001); Jones v. Malin, 2017 WL 985943, at *3, No. 15-CV-5381 (S.D.N.Y. Mar. 13, 2017).

Even where a plaintiff is able to show that sincerely held religious beliefs were substantially burdened, a challenged regulation or law still passes constitutional muster "'if it is reasonably related to legitimate penological interests.'"  Salahuddin, 467 F.3d at 274 (quoting O'Lone, 482 U.S. at 349 (quoting Turner v. Safley, 483 U.S. 78, 89 (1987)).  The "reasonableness test" is applied less restrictively than is ordinarily the case.  Turner, 482 U.S. at 89.  At this stage, defendants "bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct."  Salahuddin, 467 F.3d at 275.  Nevertheless, "the burden remains with the prisoner to show that these [articulated] concerns were irrational."  Id. (quoting Ford, 352 F.3d at 595 (internal quotation marks omitted) (citations omitted)).

The Second Circuit, citing the Supreme Court, has outlined four factors guiding courts' reasonableness determination:

> [1] whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; [2] whether prisoners have alternative means of exercising the burdened right; [3] the impact on guards, inmates, and prison resources of accommodating the right; and [4] the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.

Salahuddin, 467 F.3d at 274 (citing Turner, 482 U.S. at 90-91).  In this Circuit, courts begin by determining "whether the challenged regulation or action 'has a valid, rational connection to a legitimate governmental objective.'"  Vann v. Fischer, 2014 U.S. Dist. LEXIS 118247, at *29 (S.D.N.Y. Aug. 25, 2014) (quoting Salahuddin, 467 F.3d at 274).  Courts are to "accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (collecting authority); see also O'Lone, 482 U.S. at 353 (noting deference courts accord the judgment of prison officials, who are charged with the "formidable task" of running a prison).

13

In weighing the <u>Turner</u> factors, DOCCS has a compelling interest in implementing programs like the SOCTP.  The Second Circuit has recognized that under <u>McKune v. Lile</u>, 536 U.S. 24 (2002), the Supreme Court will uphold a sex offender treatment program like the SOCTP as satisfying the Constitution in most contexts ("[a] sex-offender treatment program that requires disclosure of criminal conduct without guaranteeing immunity does not violate the Fifth Amendment's Self-incrimination Clause unless the consequences for non-disclosure *compel* the prisoner to make self-incriminating statements").  <u>Krull v. Oey</u>, 805 F. App'x 73, 75 (2d Cir. 2020). In <u>Krull</u>, the Second Circuit remanded a Fifth Amendment challenge to the SOCTP to determine the extent to which "the prospect of 'an increased SORA risk level' compels self-incrimination." <u>Krull v. Annucci</u>, 2022 WL 44775, No. 21-CV-03395 (S.D.N.Y. Jan. 5, 2022).[4]  Plaintiff here does not challenge the SOCTP on Fifth Amendment grounds.  The Supreme Court and the Second Circuit have not addressed a First Amendment or RLUIPA challenge to the SOCTP.

1.      **Plaintiff's Religious Beliefs Have Not Been And Will Not Be Substantially Burdened By Participation In The SOCTP**

As set forth above, Plaintiff claims that he is not guilty of the crimes he was convicted of, and that because his participation in the SOCTP allegedly requires that he admit his guilt, Defendants would compel him to be untruthful, thereby forcing him to violate his religious beliefs, an abridgement of his rights.  While Plaintiff concedes that it is not unreasonable in general to require participation in the SOCTP for evaluating the timing and terms of release after a sentence,

---

[4] As explained by the district court in <u>Krull</u>, N.Y. Corr. Law § 168, et seq. the Sex Offender Registration Act, or "SORA," "requires that inmates who have been convicted of certain sex offenses be certified as a sex offender and assessed for risk of re-offense prior to being released from prison...[and be] assigned a particular offender 'Level' prior to his/her release" by a 5-member Board as a recommendation to the sentencing court which holds a hearing to consider the recommendation ... "guided 'largely' by the offender's RAI score... calculated by tallying points assessed in fifteen different categories, including ... whether an offender participated in treatment and accepted responsibility for his actions, refused treatment or was expelled from treatment," but which the court may accept or reject.  <u>Krull</u>, 2022 WL 44775, at *2.  <u>Krull</u>, a Fifth Amendment challenge in which the SOCTP had run its course, and the plaintiff there had received an RAI score, is distinguishable from this First Amendment challenge with, as yet, no score.

in his case, such participation is unreasonable, to the extent he is required to lie about his guilt in violation of his religious tenets.  But as set forth above, and as the exhibits appended to the Complaint establish, Plaintiff is not required to admit guilt in order to participate.  His beliefs are not burdened, as he is not required to admit guilt.

The Supreme Court decision in <u>McKune</u> suggests that a prison's sex offender program requiring disclosure of criminal conduct without guaranteeing immunity does not necessarily violate the Fifth Amendment, but that "unconstitutional compulsion involves …Courts [in the determination of] whether the consequences of an inmate's choice to remain silent are closer to the physical torture against which the Constitution clearly protects or the *de minimis* harms against which it does not." <u>McKune</u>, 536 U.S. at 41.  In the First Amendment context, courts addressing the issue have held that participation in the SOCTP does not substantially burden incarcerated individuals' exercise of religion.  <u>See</u> <u>Griffin v. Alexander</u>, 2011 WL 4343199, No. 09-CV-1334 (N.D.N.Y. Sept. 14, 2014) (dismissing Free Exercise and RLUIPA claims brought by a Jehovah's Witness who challenged the SOCTP and holding that "participation in the SOCTP was not a substantial burden on Griffin's exercise of his religion as he was not required to admit to the commission of any crime").  There is no First Amendment or RLUIPA precedent to the contrary. Plaintiff's religious exercise has not been substantially burdened.

**2.   Defendants' Actions Are Justified By Legitimate Penological Interests And Rational**

Even if Plaintiff's religious beliefs were burdened unconstitutionally, such a burden is justified because it advances DOCCS' legitimate penological interests.  <u>See</u> <u>e. g.</u>, <u>McKune</u>, 536 at 24.  Courts in this Circuit have found that the sort of compulsion the SOCTP requires does not, in most contexts, violate the Constitution.  <u>See Edwards v. Goord</u>, 362 Fed. App'x 195, 198 (2d Cir. 2010) (in rejecting a *habeas* challenge, the Circuit held that the SOCTP advanced legitimate State

interests in protecting the public and did not violate rights against self-incrimination by conditioning good time credits and discretionary privileges on participation); McChesney v. Hogan, 2010 WL 1027443, at *7, Nos. 08-CV-1186, 08-CV-1290 (N.D.N.Y. Feb 26, 2010), report and recommendation adopted, 2010 WL 1037957 (N.D.N.Y. Mar. 18, 2010); Adams v. Annucci, 2018 WL 4608216, at *8 (S.D.N.Y. Sept. 25, 2018).  Because the SOCTP strikes a reasonable balance between the accommodation of Plaintiff's beliefs and DOCCS' legitimate penological interests, there has been no First Amendment violation and such claims should be dismissed.

**C.    Under RLUIPA, Defendants Have Not Substantially Burdened Plaintiff's Exercise Of Core And Sincere Religious Beliefs**

Pursuant to the stricter test for government action under RLUIPA, "religious exercise," "whether or not compelled by, or central to, a system of belief" (42 U.S.C. §2000cc-5 (7) (A)) is protected against government restriction unless the government establishes that it has a compelling interest in advancing such restriction and furthers that interest through the least restrictive means. Westchester Day School v. Village of Mamoroneck, 386 F. 3d 183 (2d Cir. 2004).  DOCCS need only meet that burden in this case, however, if Plaintiff first establishes that DOCCS substantially burdens his core and sincerely-held religious exercise.

a.    DOCCS Policy Does Not Substantially Burden Plaintiff's Core Beliefs

Plaintiff cannot establish that his core beliefs have been "substantially burdened," which the Fifth Circuit concluded, citing to 146 Cong. Rec. S7776 (July 27, 2000), is demonstrated by any restriction which "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs."  Adkins v. Kaspar, 393 F. 3d 559, 567 (5th Cir. 2004).  The Seventh Circuit has heightened "substantial burden" to mean "one that necessarily bears direct, primary and fundamental responsibility for rendering religious exercise… effectively impracticable."  Civil Liberties for Urban Believers v. City of Chicago, 342 F. 3d 752, 761 (7th

Cir. 2003).  See also Midrash Sephardi, Inc. v. Town of Surfside, 366 F. 3d 1214, 1227 (11th Cir.

2005) ("substantial burden" means more than "inconvenience," and must coercively prevent or

force religious exercise), cited in Murphy v. New Milford Zoning Commission, 402 F. 3d 342, 350

(2d Cir. 2005).  As set forth above, Plaintiff does not plead that participation in the SOCTP renders

his religious exercise "effectively impracticable," and thus he cannot establish any significant

RLUIPA violations.  Even accepting that his core beliefs prohibit him from admitting guilt when

he sincerely believes he is not guilty of the crimes for which he was convicted and sentenced (and

for which he expressed regret in open court at sentencing), the SOCTP does not compel him to

admit guilt, as recognized in the case law.  As he was instructed in the response to his grievance

from Defendant Burnett, he is not required to admit guilt if he participates in the SOCTP.

b.    DOCCS' Policy Is The Least Restrictive Means To Advance Its Compelling Interests

Even if the SOCTP did burden Plaintiff in violation of RLUIPA, DOCCS has a compelling

interest in fostering policies that require participation in sex offender counseling programming in

its prisons.  And in advancing that compelling interest, as the Supreme Court noted, DOCCS

should be granted deference in matters of prison security and administration.  Cutter v. Wilkinson,

125 S. Ct. 2113, 2122 (2005) (stating that RLUIPA should not be read to "elevate accommodation

of religious observances over an institution's need to maintain order and safety").  The SOCTP

provides the least restrictive requirements, as the program does not require admissions of guilt, but

rather only the willingness to discuss the facts and circumstances giving rise to an individual's

convictions.  Accordingly, Plaintiff's RLUIPA claims should be dismissed.

## III.    **PLAINTIFF'S EQUAL PROTECTION RIGHTS HAVE NOT BEEN VIOLATED**

Plaintiff claims, without specifying how, that the SOCTP violates the Equal Protection

Clause.  Presumably, his claim is that he, identifying as Hindu, is treated differently because of his

group identification, from others belonging to other religious groups.  He is not treated differently. And he offers no evidence, let alone any allegation, of different treatment from any other specific group.  While <u>City of Cleburne v. Cleburne Living Center, Inc</u>., 473 U.S. 432, 439 (1985) notes that the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike," not every classification is prohibited. Government actors simply must "refrain" from treating differently persons who are in all relevant respects alike."  <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 10 (1992); <u>Benjamin v. Coughlin</u>, 905 F. 2d 571, 575 (2d Cir. 1990).  Plaintiff's claim that Defendants have not accommodated his religious practices equally with similarly situated religious groups fails – all such groups are equally subject to the SOCTP requirements. It is irretrievably unclear, however, precisely what group of individuals Plaintiff alleges he should belong to for Equal Protection purposes, and it is equally unclear what group with whom Plaintiff seeks comparison.

### A.  <u>No Similarly Situated Group Is Treated More Favorably Than Plaintiff's</u>

Plaintiff has not plausibly alleged that a similarly situated group of sex offenders is treated differently from those who are Hindu, and to the extent that he seeks comparison with sex offenders who profess no or different religious tenets (and presumably could lie without compunction), his comparison falls outside the Equal Protection Clause.  Plaintiff fails to identify with sufficient specificity any better-treated similarly situated group, and the Supreme Court has held that the Constitution does not provide that "every religious sect or group within a prison – however few in number – must have identical facilities or personnel.  <u>See</u> <u>e. g.</u>, <u>Beto v. Cruz,</u> 405 U.S. 319, 322, at n.2 (1972); <u>see also</u> <u>Adkins v. Kaspar</u>, 393 F. 3d 559 (5th Cir. 2004) (not "every religious sect or group within a prison – however few in numbers – must have identical" treatment).

Plaintiff's allegation that Hindu inmates are treated differently, even if it could be credited (as if there are religions that do not condemn lying), does not give rise to an Equal Protection claim.

**B.   <u>DOCCS Policies Withstand Rational Basis Review</u>**

Even if Plaintiff could establish that a similarly-situated group was treated differently from the group to which he belongs, Plaintiff cannot demonstrate that DOCCS policy is without rational basis.   Alleged religious discrimination on Equal Protection grounds is subject to rational basis scrutiny.   <u>Locke v. Davey</u>, 540 U.S. 712, 721 (2004).   Because DOCCS policies satisfy the First Amendment, the rational basis standard, deferential to state agency decisions, is applied.   See <u>Weinstein v. Albright,</u> 261 F. 3d 127, 140 (2d Cir. 2001).   This Court need not "pass judgment" on the wisdom of any DOCCS policy in this context, but rather only on the "plausible reasons for" the policies.   <u>General Media Communication, Inc v. Cohen</u>, 131 F. 3d 273, 286 (2d Cir. 1997) <u>cert.</u> <u>denied</u>, 524 U.S. 951 (1998); <u>see</u> <u>also</u> <u>Vacco v. Quill,</u> 521 U.S, 793, 800 (1997).   Any "equal protection challenge to a government classification must be denied if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."   <u>Weinstein</u>, 261 F. 3d at 140.   Given the rational bases articulated above for the SOCTP, Plaintiff's Equal Protection claim must fail.

Finally, no Defendant has been alleged to have had the requisite discriminatory animus to state an Equal Protection claim.   As the Second Circuit has pointed out, "[t]o prove an equal protection violation, claimants must prove purposeful discrimination directed at an identifiable or suspect class."   <u>Giano v. Goord,</u> 54 F. 3d at 1057.   Each defendant must be somehow personally involved for liability to attach, and "it is not enough for the defendant simply to be a 'policy maker' at the time the unconstitutional events occur."   <u>Cuocco v. Moritsugu,</u>  222 F. 3d 99, 109 (2d Cir. 2000).

In sum, because the First and Fourteenth Amendment, RLUIPA, and Equal Protection claims upon which injunctive and declaratory relief would be based should be dismissed, injunctive or declaratory relief should be denied.  See Spiteri v. Russo, No. 12-CV-2780, 2013 WL 4806960, at *44 (E.D.N.Y. Sept. 7, 2012), aff'd sub. nom. Spiteri v. Camacho, 622 F. App'x 9 (2d. Cir. 2015).

### IV.     PLAINTIFF'S CLAIMS FOR RETALIATION MUST BE DISMISSED

To the extent that Plaintiff's Complaint can be read to allege a retaliation claim, such as claim must be dismissed for failing to plead sufficiently specific allegations, and for failure to exhaust such a claim.  In any event, courts assess claims of retaliation with "skepticism and extreme care," as any action can appear retaliatory if framed in such a way.  See Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001).  Plaintiff must allege for a retaliation claim "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) (quoting Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002)).  Here, Plaintiff fails to allege any facts giving rise to retaliatory conduct.  Plaintiff's Complaint only implies that, should he not participate or admit guilt in the SOCTP, he will, in retaliation, be denied early release or will have a more negative designation of sex offender status imposed on him.  That implied claim does not amount to retaliation.  A retaliation claim requires proof that the defendant will take adverse action against the plaintiff because of his exercise of rights, not because of a pre-existing policy or course of action as Plaintiff alleges.  See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001).  Plaintiff's claims, thus, should be dismissed, as they are inspecific, and inadequately pleaded, unexhausted, and, in addition speculative and therefore unripe.

### V.   PLAINTIFF'S CLAIMS MAY BE DISMISSED FOR FAILURE TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires incarcerated individuals to exhaust *all* available administrative remedies *before* an action is brought alleging unlawful prison conditions under §1983 or any other federal law in federal court. § 1997e(a); Amaker v. Lee, No. 13-cv-5292(NSR), 2019 WL 1978612, at *4 (S.D.N.Y. May 3, 2019). Without exception, a Plaintiff must use all available administrative remedies and must do so properly in order to file a claim under § 1983. Ross v. Blake, ____ U.S. ____, 136 S.Ct. 1850, 1856 (2016); Woodford v. Ngo, 548 U.S. 81, 93 (2006) (the incarcerated must "us[e] all steps that the agency holds out, and do[] so properly (so that the agency addresses the issues on the merits.")); Dabney v. Pegano, 604 F. App'x 1, at *3 (2d Cir. 2015); see also Lopez v. Cipolini, 136 F. Supp. 3d 570, 580-82 (S.D.N.Y. 2015) (citing Booth v. Churner, 532 U.S. 731, 740 (2001)). When available administrative remedies are not fully and properly exhausted prior to filing suit, the action must be dismissed. Hicks v. Adams, 692 F. App'x 647, 648 (2d Cir. 2017).

Plaintiff here was required to follow the procedures set forth in DOCCS' Grievance Program. 7 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") § 701 et seq.; see Abdallah v. Ragner, No. 12-CV-8840, 2013 WL 7118083, at *2 (S.D.N.Y. Nov. 22, 2013). Plaintiff was to file a grievance, which would be heard first by the Inmate Grievance Resolution Committee (IGRC) which, if decided against him, he then could appeal to the prison superintendent, and then, if decided adversely again, he could appeal to CORC. The Complaint and the exhibits attached thereto and incorporated therein establish that Plaintiff filed his grievance and appeals, but did not await the decision from CORC on his appeal of Defendant Superintendent Burnett's response to his appeal from the decision of the IGRC. See Complaint, p. 8 (conceding that the Complaint was filed, and the action brought, before CORC issued a decision on the appeal of Superintendent

Bennett's response to his appeal from the response from the IGRC to his original grievance).  As

such, Plaintiff's claims may have been unexhausted when he brought the action, see Khudan v.

Lee, 2015 WL 5544316, at *1, No. 12-CV-8147 (S.D.N.Y. Sept. 17, 2015), if the CORC response

was timely.[5]  To the extent that the CORC response was not timely, see Hayes v. Dahlke, 976 F3d

259 (2d Cir. 2020), Plaintiff's failure to exhaust would still bar any claims for injunctive relief or

damages arising out of the SOCTP at Collins – and would be irrelevant to claims mooted by his

transfer from Fishkill or his claims as to Defendants who were never a subject of his grievance.[6]

This case demonstrates, however, the constructive purposes of exhaustion in promoting

administrative and judicial efficiency. Woodford, 548 U.S. at 89.  Responses from DOCCS

officials to Plaintiff explained that his rights were not being violated by enrolling in the SOCTP

because he would not be compelled to admit guilt, allegedly contrary to his religious tenets.  That

explanation could have spared the parties and the Court this lawsuit.  Upon this rationale, neither

the Supreme Court nor the Second Circuit has recognized any exception to the rule. Bowie v.

Woodruff, No. 9:18-CV-0266 (BKS/ML), 2019 WL 7606078, at *6 (N.D.N.Y. Sept. 20, 2019);

see also Ford v. Smith, No. 9:12–CV–1109 (TJM/TWD), 2014 WL 652933, at *2 (N.D.N.Y. Feb.

19, 2014).[7]

---

[5] The CORC is to issue a decision within thirty days of receipt of the appeal. N.Y.C.R.R. § 701.5(d)(3)(ii).  Plaintiff
may argue that exhaustion should be excused because CORC did not, allegedly, respond within that time.

[6] Complete exhaustion of administrative remedies is achieved when the grievant receives a final decision from the
highest body provided by the administrative process – here, the CORC.  Booth v. Churner, 532 U.S. 731, 735 (2001);
Parris v. New York State Dep't Corr. Servs., 947 F.Supp.2d 354, 361 (S.D.N.Y. 2013). Although Plaintiff's suit, on
its face, may appear unexhausted since he brought this lawsuit on June 17, 2021, prior to the CORC's issuance of its
final decision, grounds for the lawsuit's dismissal, see Lopez, 136 F. Supp. 3d at 582, the record may, when developed,
show that the CORC response was issued beyond 30 days, which may excuse exhaustion at least in part.

[7] Of course, an administrative remedy is unavailable if: it is futile, impossible to follow, or hindered through
"machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1859-60.  Outside of the exception to exhaustion
in the New York regulations, most courts have not found a delay in issuing a decision from CORC to excuse the
exhaustion requirement. See Berkley v. Ware, No. 16 Civ. 1326, 2018 WL 3736791, at *6 (N.D.N.Y. Jul. 6, 2018)
(five-month delay did not excuse exhaustion ); Ford v. Smith, 2014 WL 652933, at *3 (N.D.N.Y. Feb. 19, 2014) (6-
month delay did not excuse exhaustion; Feliz v. Johnson,  2019 WL 3491232, at *14, No. 9:17-CV-1294  (N.D.N.Y.

Whatever the effect of his failure to exhaust on the claims arising out of Fishkill, his injunctive claims, now moot as against Fishkill, even if they could survive as against certain Defendants now that he is at Collins, must be dismissed for reasons having nothing to do with exhaustion.  Plaintiff fails to allege personal involvement of Defendants in any event, as against all Defendants except, arguably, Defendants Annucci, McCoy and McCallister.   But all of Plaintiff's claims against the Fishkill Defendants are moot now that Plaintiff is at Collins.   But even the claims as against Defendants Annucci and McCoy – who were sued based on the speculative allegations that Plaintiff may have been subject to compulsory admissions of guilt while at Fishkill – would now also be moot.  And Plaintiff's claims against Defendant McCallister, which were asserted only after Plaintiff was transferred to Collins, cannot have been exhausted, to the extent that they arose out of the events at Fishkill.  And those claims, along with any directed against Defendant Brotz, the sole Collins Defendant, could not have been exhausted by any grievance – excused or unexcused – that was pursued prior to the filing of this lawsuit, since the lawsuit then concerned only Fishkill.   Claims against Defendants McCallister and Brotz necessarily concern only Collins, and therefore cannot have been exhausted prior to the bringing of this action.[8]

It cannot be disputed that this action was not brought before Plaintiff was incarcerated at Collins, where he is now enrolled in the SOCTP.  Claims as to events at Collins were not ripe when Plaintiff brought this lawsuit, and they are necessarily unexhausted as to Defendant Brotz

---

Aug. 1, 2020) (14-month delay did not excuse exhaustion ); but see Smith v. Lioidice, 2020 WL 1033644, at *4, No. 17-cv-7028  (S.D.N.Y. Mar. 2, 2020) (2-year delay rendered exhaustion unavailable); High v. Switz, 2018 WL 3736794, at *4, No. 9:17-CV-1067 (N.D.N.Y. Jul. 9, 2018) (7-month delay excused exhaustion).

[8] Claims arising out of events at Collins do not belong in this lawsuit.  To the extent such claims are deemed a part of this lawsuit, and some claims herein survive, then this action should be transferred to the Western District of New York, where Plaintiff resides and where the events are taking place.

and as to alleged violations that have occurred at Collins subsequent to its filing on June 17, 2021.

See also Allah v. Adams, 2021 WL 5707380, No. 16-CV-6596 (W.D.N.Y. Dec. 2, 2021).

Accordingly, Plaintiff's injunctive claims should be dismissed as either moot or unripe, or, like his

claims for nominal damages, dismissed for failure to state a claim upon which relief can be granted.

## VI.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

In any event, at a minimum, Defendants are entitled to qualified immunity, as public

officials are shielded "from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Moreover, "whether an official

protected by qualified immunity may be held personally liable for an allegedly unlawful official

action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the

legal rules that were "clearly established" at the time it was taken." Anderson v. Creighton, 483

U.S. 635, 639 (1987) (internal citation omitted).[9]  Defendants are entitled to qualified immunity

"if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively

reasonable for the defendant to believe that his action did not violate such law."  Johnson v.

Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir. 2001).

In determining whether a defendant violated clearly established rights, the right must be

defined with sufficient specificity, Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011), as a "right is

clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the

Second Circuit has recognized the right, and (3) a reasonable defendant [would] have understood

from the existing law that [his] conduct was unlawful." Williams v. King, 56 F. Supp. 3d 308, 324

(S.D.N.Y. 2014) (internal citations and quotation marks omitted) (alterations in original).

---

[9] The scope of the defense has been appropriately defined by the Supreme Court as one providing "protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Defendants are entitled to qualified immunity on Plaintiffs' claims as there is no Supreme Court or Second Circuit precedent that holds that the SOCTP violates the Constitution, or that, as applied to Plaintiff, the SOCTP unlawfully infringes on religious exercise in violation of the First Amendment, RLUIPA, or the Equal Protection Clause. As observed by the district court in <u>Griffin</u>, there is no clearly established law of which a reasonable DOCCS official would be aware that suggests that the SOCTP, as applied in these circumstances to an individual professing to practice the Hindu religion, would unlawfully abridge Plaintiff's First Amendment, RLUIPA or Equal Protection rights.

Thus, Plaintiff's claims for damages – even nominal damages – must be dismissed on grounds of qualified immunity.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request the Court grant their Motion to Dismiss the Complaint in its entirety , or alternatively, as to any surviving claims, transfer the action to the Western District of New York, where Plaintiff resides and the SOCTP is taking place.

Dated: New York, New York
   April 8, 2022

LETITIA JAMES
Attorney General of the
State of New York
<u>Attorney for Defendants</u>
By:

/s Michael J. Keane

Michael J. Keane
Neil Shevlin
Assistant Attorneys General
28 Liberty, 18th Floor
New York, New York 10005
(212) 416-8550

MICHAEL J. KEANE
Assistant Attorney General
<u>of Counsel</u>