UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
Sanjay Tripathy,                                                      :

                         Plaintiff,                      :

         -against-                                      :

Maria Feuz, et al.,                                              :

                   Defendants.                 :
------------------------------------------------------X

21CV05349(VB)

 

**MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTION TO
DISMISS THE AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO
TRANSFER VENUE TO THE WDNY OR NDNY**

 

LETITIA JAMES
Attorney General of the
State of New York
<u>Attorneys for Defendants</u>
28 Liberty Street
New York, New York 10005
(212) 416- 8561

NEIL SHEVLIN
Assistant Attorney General
   of <u>Counsel</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ...........................................................................................3

STANDARDS OF REVIEW.........................................................................................5

ARGUMENT.................................................................................................................6

POINT I       PLAINTIFF'S CLAIMS AGAINST DEFENDANTS WHO ARE
              NOT ALLEGED TO BE PERSONALLY INVOLVED IN ANY
              WRONGDOING SHOULD BE DISMISSED…………………………6

POINT II      PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF SHOULD
              BE DISMISSED BECAUSE THE CLAIMS ARE
              MOOT/UNRIPE & OTHERWISE FAIL TO STATE A CAUSE
              OF ACTION FOR FIRST AMENDMENT AND RLUIPA
              VIOLATIONS………………………………………………………8

       A.     Plaintiff's Injunctive Relief Claims Fail or Are
              Moot or Unripe………………………………………………...…………8

       B.     Plaintiff's Free Exercise Claims Fail………………….…………………10

       1.     Plaintiff's Religious Beliefs Have Not Been and Will Not Be
              Substantially Burdened by Participation In The SOCTP……………..……...12

       2.     Defendants' Actions Are Justified by Legitimate Penological
              Interests …………………………………...………………………………...13

       C.     Defendants Have Not Violated Plaintiff's Rights Under RLUIPA……….14

       1.     DOCCS Policy Does Not Substantially Burden Plaintiff's Core
              Beliefs……………………………………………………………………..14

       2.     DOCCS' Policy Is The Least Restrictive Means to Advance Its
              Compelling Interests …………………………………………………....15

i

POINT III      PLAINTIFF'S EQUAL PROTECTION RIGHTS
HAVE NOT BEEN VIOLATED ...............................................................15

    A.     No Similarly Situated Group is Treated More Favorably Than
Plaintiff's ...........………………………………………………...……....16

    B.     DOCCS Policies Withstand Rational Basis Review ......…………………16

POINT IV      PLAINTIFF FAILS TO STATE A CAUSE OF ACTION THAT HIS
RIGHTS WERE VIOLATED WHEN HIS SOCTP RISK
DESIGNATION WAS CHANGED …………………………………………17

POINT V      PLAINTIFF'S RETALIATION CLAIMS MUST BE DISMISSED
BECAUSE HE FAILED TO STATE A CLAIM AS TO THEM AND
BECAUSE HE FAILED TO EXHAUST CERTAIN OF THEM ………19

POINT VI      THE ELEVENTH AMENDMENT BARS OFFICIAL CAPACITY
DAMAGES CLAIMS ……………………………………………...………21

POINT VII     DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY……22

POINT VIII    THE CLAIMS AGAINST THE NON-FISHKILL DEFENDANTS
SHOULD BE DISMISSED OR SEVERED AND TRANSFERRED
TO THE WDNY OR NDNY ……………………………………........…..23

CONCLUSION ……………………………………………………………………………………25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Annucci*,
2018 WL 4608216 (S.D.N.Y. Sept. 25, 2018)...................................................... 13-14

*Adkins v. Kaspar*,
393 F. 3d 559 (5th Cir. 2004) ..................................................................14

*Amaker v. Lee*,
No. 13-cv-5292(NSR), 2019 WL 1978612 (S.D.N.Y. May 3, 2019)......................21

*Anderson v. Creighton*,
483 U.S. 635 (1987)................................................................................22

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011)................................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................5, 7

*Auerbach v. Board of Education*,
136 F.3d 104 (2d Cir. 1998).....................................................................9

*Barnes v. Furman*,
629 F. App'x (2d Cir. 2015) ...................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................5, 8

*Beto v. Cruz*,
405 U.S. 319 (1972)...............................................................................16

*City of Cleburne v. Cleburne Living Center, Inc.*,
473 U.S. 432 (1985)...............................................................................15

*Civil Liberties for Urban Believers v. City of Chicago*,
342 F. 3d 752 (7th Cir. 2003) ..................................................................14

*Cuocco v. Moritsugu*,
222 F. 3d 99 (2d Cir. 2000)......................................................................17

*Cutter v. Wilkinson*,
125 S. Ct. 2113 (2005).............................................................................15

iii

*Dawes v. Walker*,
 239 F.3d 489 (2d Cir. 2001)........................................................................19

*Dickerson v. Novartis Corp.*,
 315 F.R.D. 18 (S.D.N.Y. 2016) ...................................................................25

*Doe v. Annucci*,
 No. 14-CV-2953, 2015 WL 4393012 (S.D.N.Y. July 15, 2015) .............................6

*Drew v. City of New York*,
 No. 18 Civ. 011709, 2021 WL 1226413 (S.D.N.Y. Mar. 31, 2021) .................17, 19

*Edwards v. Goord*,
 362 Fed. App'x 195 (2d Cir. 2010).............................................................13

*Etuk v. Slattery*,
 936 F.2d 1433 (2d Cir. 1991)......................................................................6

*Ex Parte Young*,
 209 U.S. 123 (1908)................................................................................8

*Farid v. Ellen*,
 593 F.3d 233, 249 (2d Cir. 2010)…………………………………………………6

*Farid v. Smith*,
 850 F.2d 917 (2d Cir. 1988).....................................................................21

*Farrell v. Burke*,
 449 F.3d 470, 484 (2d Cir. 2006)……………………………………….………6

*General Media Communication, Inc v. Cohen*,
 131 F. 3d 273 (2d Cir. 1997) cert. denied, 524 U.S. 951 (1998) ...........................17

*Giano v. Goord*,
 54 F. 3d at 1057 .................................................................................17

*Gill v. DeFrank*,
 No. 98-CV-7851, 2000 WL 897152 (S.D.N.Y. July 6, 2000), aff'd 8 Fed.
 App'x 35 (2d Cir. 2001).........................................................................10

*Gonzalez v. Hasty*,
 651 F.3d 318, 324 (2d Cir. 2011)…………………………………………………24

*Griffin v. Alexander*,
 No. 09-CV-1334, 2011 WL 4343199 (N.D.N.Y. Sept. 14, 2014)...................13, 23

*Guillory v. Cuomo*,
 616 Fed. Appx. 12 (2d Cir. 2015) ................................................................8

iv

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)..........................................................................................22

*Hayden v. Paterson*,
  594 F.3d 150 (2d Cir. 2010)...............................................................................5

*Hicks v. Adams*,
  692 F. Appx 647 (2d Cir. 2017)........................................................................21

*Hurd v. Fredenburgh*,
  984 F.3d 1075,1087 (2d Cir. 2021)...................................................................18

*Hynes v. Squillace*,
  143 F.3d 653 (2d Cir. 1998)..............................................................................19

*Jane Stone v. Annucci*,
  No. 20 Civ. 1326(RA), 2021 WL 4463033 (S.D.N.Y. Sept. 28, 2021)...........23-24

*Johnson v. Newburgh Enlarged Sch. Dist.*,
  239 F.3d 246 (2d Cir. 2001)..............................................................................22

*Krull v. Annucci*,
  2022 WL 44775, No. 21-CV-03395 (S.D.N.Y. Jan. 5, 2022) .............................12

*Krull v. Oey*,
  805 Fed. Appx. 73 (2d. Cir. 2020) ......................................................................9

*Lando v. Annucci*,
  No. 18-CV-1472 2021 WL 1131475 (NDNY, Mar. 24, 2021) .............................9

*Locke v. Davey*,
  540 U.S. 712 (2004)...........................................................................................16

*Luxexpress 2016 Corp. v. Gov't of Ukraine*,
  No 15-CV-4880 (VB), 2018 WL 1626143 (S.D.N.Y. Mar. 30, 2018)...................6

*Malley v. Briggs*,
  475 U.S. 335 (1986)...........................................................................................22

*McChesney v. Hogan*,
  Nos. 08-CV-1186, 08-CV-1290, 2010 WL 1027443 (N.D.N.Y. Feb 26, 2010) ...................13

*McKune v. Lile*,
  536 U.S. 24 (2002)......................................................................................11, 13

*Midrash Sephardi, Inc. v. Town of Surfside*,
  366 F. 3d 1214 (11th Cir. 2005) ........................................................................14

*Morales v. Mackalm*,
   278 F.3d 126, 131 (2d Cir. 2002)…………………………………………………………………………19

*Murphy v. New Milford Zoning Commission*,
   402 F. 3d 342, 350 (2d Cir. 2005)……………………………………………………………14-15

*Nordlinger v. Hahn*,
   505 U.S. 1 (1992).........................................................................................................16

*O'Lone v. Estate of Shabazz*,
   482 U.S. 342 (1987)....................................................................................................11

*Overton v. Bazzetta*,
   539 U.S. 126 (2003)....................................................................................................11

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v.*
   *Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013)..........................................................................................5

*People v. Tripathy*,
   187 A.D.3d 515 (1st Dep't 2020), leave to appeal denied, 36 N.Y.3d 1101
   (2021)...........................................................................................................................3

*Proctor v. Leclaire*,
   846 F.3d 597 (2d Cir. 2017)........................................................................................18

*Salahuddin v. Goord*,
   467 F.3d 263 (2d Cir. 2006)............................................................................. 7,10-11

*Schnall v. Marine Midland Bank*,
   225 F.3d 263 (2d Cir. 2000).........................................................................................6

*Scott v. Coughlin*,
   344 F.3d 282 (2d Cir. 2003)........................................................................................19

*Seminole Tribe of Florida*,
517 U.S. 44 (1996) ……………………………………………………………………………21

*Sides v. Paolano*,
   782 Fed. Appx. 49 (2d Cir. 2019).................................................................................21

*Turner v. Safley*,
   483 U.S. 78 (1987).......................................................................................................11

*United States EPA ex. rel. McKeown v. Port Authority*,
   162 F. Supp. 2d 173 (S.D.N.Y. 2001), aff'd on district court's opinion, 23
   Fed. Appx. 81 (2d Cir. 2001), cert. denied, 535 U.S. 1079 (2002) ........................24

*Vacco v. Quill*,
    521 U.S (1997)........................................................................................17

*Vann v. Fischer*,
    No. 11 Civ. 1958 (KPF), 2014 WL 4188077 (S.D.N.Y. Aug. 25, 2014) ...............................11

*Victory v. Pataki*,
    814 F.3d 47 (2d Cir. 2016)........................................................................8

*Washington v. McCoy*,
    816 Fed. Appx. 570 (2d Cir. 2020) ........................................................7

*Weinstein v. Albright*,
    261 F. 3d 127 (2d Cir. 2001)............................................................ 16-17

*Westchester Day School v. Village of Mamoroneck*,
    386 F. 3d 183 (2d Cir. 2004)................................................................14

*Williams v. King*,
    56 F. Supp. 3d 308 (S.D.N.Y. 2014)................................................22

## CONSTITUTIONS

First Amendment ……………………………………………………3, 8, 10, 12-14, 16, 22-23

Fifth Amendment ...................................................................... 2,12-13, 17, 19

Eleventh Amendment....................................................................21

Fourteenth Amendment ...................................................... 1,15, 17-18

Fifth and Fourteenth Amendments ......................................................2, 17

## FEDERAL STATUTES

28 U.S.C.
    § 1406(a) ............................................................................ 23-24

42 U.S.C.
    § 2000cc-5 (7) (A) ................................................................14

Complaint. The Prison Litigation Reform Act, 42 U.S.C.
    § 1997e....................................................................................20

Criminal Sexual Act................................................................3

False Claims Act ....................................................................... 2, 18-19

First and Fourteenth Amendments, and under the Religious Land Use and
Institutionalized Persons Act ........................................................................................1

RICO ...................................................................................................................... 2, 18-19

**STATE STATUTES**

Sex Offender Management and Treatment Act ...........................................................2

Sex Offender Registration Act....................................................................... 2, 4-12

SORA ....................................................................................................................4, 12

**RULES**

Fed. R. Civ. P. 12 (b)(1)...............................................................................................1, 6

Fed. R. Civ. P. 12(b)(6)................................................................................................1, 5

Fed. R.Civ.P. 12(b)(3)…………………………………………………………………1, 23

**MISCELLANEOUS AUTHORITIES**

146 Cong. Rec. S7776 (July 27, 2000) ......................................................................14

DOCCS SOCTP, https://doccs.ny.gov/sex-offender-counseling-and-treatment-
program-soctp ................................................................................................................4

## PRELIMINARY STATEMENT

Defendants, the State of New York, Anthony Annucci, Acting Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"), Jeff McCoy, DOCCS' Deputy of Programs, Brian McCallister, DOCCS' Sex Offender Counseling and Treatment Program ("SOCTP") Director, Edward Burnett, Superintendent of DOCCS' Fishkill Correctional Facility ("Fishkill"), Jacqueline Reid, Sex Offender Rehabilitation Counselor ("SORC") at Fishkill, Luis Gonzalez, Assistant Deputy Superintendent of Programs at Fishkill, John Wood, Deputy Superintendent of Programs at Fishkill, Maria Feuz, Social Worker at Fishkill, Ryan Brotz, SOCTP Psychologist at DOCCS' Collins Correctional Facility ("Collins"), Michelle Harrington, Chair of the New York State Board of Examiners of Sex Offenders (the "Board"), Tina Stanford, Chair, New York State Board of Parole, Kathy Hochul, Governor of the State of New York (collectively, "Defendants"), respectfully submit this memorandum of law in support of their motion, pursuant to Rule 12 (b) (1), (3), and (6) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint ("Complaint" or "Compl."), filed May 6, 2022, or, alternatively, to transfer venue to either the WDNY or NDNY.

Plaintiff Sanjay Tripathy ("Plaintiff"), a convicted sex offender incarcerated at Fishkill when he filed this lawsuit on June 17, 2021 (ECF No. 1), but who was later transferred to Collins, where he is now incarcerated, complains that Defendants have violated or may be violating his rights under multiple Federal Constitutional Amendments and statutes in three ways.

First, Plaintiff asserts that Defendants have violated his rights under the First and Fourteenth Amendments, and under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), by requiring him to lie by admitting guilt for his crimes in order to successfully complete DOCCS' SOCTP. Specifically, Plaintiff professes to be a member of the Hindu religion

and that one of the "core and sincerely held religious belief[s]" of Hinduism is to "neither lie, provide untrue facts, commit perjury or falsity." <u>See</u> Compl. ¶5. The Complaint asserts that to successfully complete the SOCTP, Plaintiff must, against his religious beliefs, admit to a lie – that he is guilty of the crimes for which he is presently incarcerated.  Plaintiff alleges that if he adheres to his religious beliefs and chooses not to participate in the SOCTP, he will not be eligible for "benefits" like good time credits for early release from his sentence, and, upon his release, will not be eligible for potential favorable treatment by the Board in connection with his Sex Offender Registration Act ("SORA") designation, his Sex Offender Management and Treatment Act ("SOMTA") requirements, and any potential civil commitment.  <u>See</u> Compl. ¶ 8.

Second, Plaintiff claims that Defendants violated his due process rights under the Fifth and Fourteenth Amendments, and violated RICO and the False Claims Act by overriding his SOCTP risk designation from low risk to moderate risk.  Specifically, prior to beginning the SOCTP, an Incarcerated Individual ("II") is given a risk designation of low, moderate, or high, which, in turn, determines the length of the SOCTP. <u>See</u> Compl. ¶ 8. According to Plaintiff, the length of the SOCTP for low risk IIs is up to six months whereas the length for moderate risk IIs is up to twelve months. <u>Id.</u> ¶ 10.  Plaintiff's initial low risk designation was changed to a moderate risk designation due to the violent nature of his crimes. <u>Id.</u>  Plaintiff claims that this "override" of his risk level was improper because it was based on erroneous facts taken from his victim's version of events, which Plaintiff disputes. <u>Id.</u> ¶¶ 10-11. In addition, Plaintiff alleges that the Defendants improperly changed his risk designation so that he would be required to participate in a longer SOCTP course that will result in DOCCS receiving more in federal funding. <u>Id.</u>

Finally, Plaintiff claims that in response to his complaints about his conditions of confinement regarding the SOCTP, he was retaliated against by the Defendants in violation of the First Amendment. Id. ¶ 14.

Plaintiff's claims should be dismissed in their entirety for several reasons, including: (i) he has failed to allege the personal involvement of certain of the Defendants in any wrongdoing; (ii) he has failed to state a claim upon which relief can be granted; (iii) he has failed to exhaust certain of his claims; and (iv) the Defendants are entitled to qualified immunity. Moreover, if the claims against the Fishkill defendants are dismissed, the remaining claims should be dismissed or transferred to either the WDNY, where Plaintiff is currently incarcerated at Collins (located in Erie County), or the NDNY where the non-Collins Defendants are located (in Albany), as the SDNY would no longer be proper.

## STATEMENT OF FACTS

Plaintiff entered DOCCS on July 19, 2018, to serve a 7-year determinate sentence, following his convictions for Criminal Sexual Act in the 1st Degree, Sexual Abuse in the 1st degree, Strangulation in the 2nd Degree, and Assault in the 2nd Degree.  See N. Y. State DOCCS Inmate Lookup, for Sanjay Tripathy, 18-R-1673, http://nysdoccslookup.doccs.ny.gov. Plaintiff admits that he was convicted of such crimes,[1] and that his appeals of those convictions have been denied by the New York State courts. Compl. at 5.[2] See also People v. Tripathy, 187 A.D.3d 515 (1st Dep't 2020), leave to appeal denied, 36 N.Y.3d 1101 (2021).

---

[1] Plaintiff testified in his own defense at his criminal trial and stated on the record at his sentencing that he regretted what happened and the pain he had caused.  See Rebecca Rosenberg, "Tech Exec Gets 7 Years For Brutal Attack On Hooker," *New York Post*, July 11, 2018 (quoting Plaintiff in open court, "'I wish I could turn back the clock, unfortunately, I can't …I would like to sincerely apologize [to the victim], who I caused a lot of pain and suffering.'") Plaintiff had no objection grounded in his religious beliefs for these public statements in open court.
[2] References to page numbers are to those assigned by the Court's ECF system.

DOCCS offers IIs convicted of certain sex crimes the opportunity to participate in its SOCTP.  See "Overview," DOCCS SOCTP, https://doccs.ny.gov/sex-offender-counseling-and-treatment-program-soctp.  Successful completion of that program results in "getting benefits" such as "good time credits [go home on earliest release date of 5/15/2024]" and the "lowest possible SORA registration level with minimal parole supervision conditions."  Compl. ¶ 8.

Plaintiff was at Fishkill from January 21, 2021 to October 19, 2021, at which time he was transferred to Collins, where he is currently incarcerated. See Compl. ¶ ¶ 15. Plaintiff asserts that while at Fishkill, he first became aware of the SOCTP and that to successfully complete that program, he would be required to admit guilt in connection with his crimes. See Compl. ¶ 9. This posed a problem for the Plaintiff who has maintained his innocence because, as a practicing Hindu (who is not permitted to lie) he would be forced to lie to complete the program. Id.  Plaintiff objected to being forced to lie by filing grievances and sending letters to DOCCS officials. Id.  In response to at least one of his letters, Jeff McCoy, DOCCS' Deputy of Programs, advised Plaintiff that he would not be required to lie or admit guilt but would be required to "openly and honestly discuss the behavior that resulted in [his] incarceration and referral to the program, demonstrate acceptance of responsibility for the conduct that resulted in [his] criminal conviction, and demonstrate an understanding of [his] sexual offending behavior and cycle of abuse." See Compl. ¶ 9.

After Plaintiff transferred to Collins, he was scheduled to begin the SOCTP. As a prerequisite to beginning the program, a risk level had to be assigned to Plaintiff that would determine the length of the SOCTP and the content of that program. See Compl. ¶ 10. In calculating an IIs risk level, DOCCS uses a "Static-99R-Tally Sheet," that lists several different categories and assigns a numeric score for each category. See Compl. ¶10 and Exhibit ("Exh.") H-4. The

Static-99R score Plaintiff received was a "1," that classified him as low risk. Id. However, Dr. Brotz, who administered the SOCTP at Collins, made a request to DOCCS for an "override" allowing Plaintiff to be classified as moderate risk because of the "extreme violence and victim harm [Plaintiff] displayed throughout the course of [his] offense." Id. On or about November 19, 2021, Brotz's requested override was granted by DOCCS' Central Office Guidance and Counseling unit. Id. and Exh. H-19.  Plaintiff objected to this determination for several reasons, including that Dr. Brotz based her decision as to the violent nature of Plaintiff's crime on the victim's version of events instead of his own version of events.

Finally, Plaintiff alleges that "Defendants" have harassed him and retaliated against him in response to his grievances and complaints. See Compl. ¶ 14.

### STANDARDS OF REVIEW

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Courts follow a "two pronged approach" to determine plausibility.  Iqbal, 556 U.S. at 678.  "First, although a complaint need not include detailed factual allegations, it must provide 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 717 (2d Cir. 2013) (quoting Iqbal, 556 U.S. at 678).  Second, "a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

5

At the same time, a claim must be dismissed pursuant to Fed. R. Civ. P. 12 (b) (1) where it is moot or unripe, requiring a determination that a claim "remain alive throughout the course of the proceedings." Etuk v. Slattery, 936 F.2d 1433, 1441 (2d Cir. 1991).

When considering a motion to dismiss under F.R.C.P. 12(b)(1) or (6), the court may consider "documents attached to the complaint or incorporated by reference." Schnall v. Marine Midland Bank, 225 F.3d 263, 266 (2d Cir. 2000).

On a motion pursuant to Rule 12(b)(3), the plaintiff bears "the burden for establishing that venue is proper." Luxexpress 2016 Corp. v. Gov't of Ukraine, No 15-CV-4880 (VB), 2018 WL 1626143, at *4 (S.D.N.Y. Mar. 30, 2018) (quotation omitted). If the Court chooses to rely on the pleadings and affidavits to decide such a motion, "the plaintiff need only make a prima facie case showing of venue," but, if the court holds an evidentiary hearing "the plaintiff must demonstrate venue by a preponderance of the evidence." Id. (quotations omitted).

**ARGUMENT**

**POINT I**
**PLAINTIFF'S CLAIMS AGAINST DEFENDANTS WHO ARE NOT ALLEGED TO BE PERSONALLY INVOLVED IN ANY WRONGDOING SHOULD BE DISMISSED**

The claims for damages and injunctive relief under § 1983 against certain Defendants should be dismissed because Plaintiff fails to allege their personal involvement. It is "well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Doe v. Annucci, No. 14-CV-2953, 2015 WL 4393012, at *19 (S.D.N.Y. July 15, 2015) (quoting Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (quoting Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006))). Further, "[b]ecause vicarious liability is inapplicable to… § 1983 suits, a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

Here, Plaintiff has divided the thirteen Defendants into several categories: (i) the Fishkill Defendants: Feuz, Reid, Gonzalez, Wood, and Burnett; (ii) the Collins Defendant: Brotz; (iii) DOCCS Central Office Defendants: Annucci, McKoy, McCallister; (iv) the State of New York; (v) Governor Hochul; (vi) New York State Board of Parole Chairperson Tina Stanford; and (vii) Board Chairwoman Michelle Harrington. See Compl. at 7. Plaintiff's claims fail to allege the personal involvement of most of the Defendants in constitutional or statutory violations.

Plaintiff's claims against the Fishkill Defendants are conclusory, as there are no allegations that these Defendants were involved in any conduct that violated his rights or injured him in any way as Plaintiff did not begin the SOCTP until after he was transferred from Fishkill to Collins. Plaintiff's conclusory allegations that these Defendants "are all personally involved [via meetings/letters/grievances/appeals/this lawsuit . . ." and "had the power but still denied any relief," is not sufficient to establish their personal involvement in any wrongdoing. Compl. ¶ 19.

As to the claims for prospective relief, "'[i]n this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'" See Washington v. McCoy, 816 Fed. Appx. 570 (2d Cir. 2020), citing Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006).  Claims against the Fishkill Defendants should be dismissed.

In addition, claims against Defendants Governor Hochul, Chairperson Stanford, Chairperson Harrington, and Acting Commissioner Annucci must also be dismissed for failure to allege their personal involvement, as a Plaintiff must point to something more than a *respondeat superior* connection between the alleged unlawful conduct of a subordinate and the executive

official.   Nor are speculative claims about these Defendants' possible future involvement sufficient. See Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (to survive a motion to dismiss, the allegations must rise above the "speculative level."). None of these Defendants is liable for the conduct of all State officials or the implementation of all State policies.  Specific allegations of personal involvement are required to sustain any claim against these Defendants.  See Victory v. Pataki, 814 F.3d 47 (2d Cir. 2016); Guillory v. Cuomo, 616 Fed. Appx. 12 (2d Cir. 2015).  There is also no allegation that these Defendants had any role in the work of the SOCTP.

Plaintiff's claims for money damages against Defendants should be dismissed for lack of personal involvement.

### POINT II
### PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED BECAUSE THE CLAIMS ARE MOOT/UNRIPE & OTHERWISE FAIL TO STATE A CAUSE OF ACTION FOR FIRST AMENDMENT AND RLUIPA VIOLATIONS

**A.    Plaintiff's Injunctive Relief Claims Fail Or Are Moot Or Unripe**

Plaintiff's claims for injunctive relief against Defendant State officials in their official capacities should be dismissed.  To the extent that he claims participation in the SOCTP has or will force him to lie – and violate his religious beliefs – that claim fails, as, upon information and belief, he is participating in the program at Collins and has not been forced to violate his religious tenets.  In fact, Plaintiff has attached to his Complaint several pages of Treatment Progress notes from his SOCTP instructors that demonstrate that he has continued to maintain his innocence while participating in the program and has not been forced to lie. See Compl. at Exh. J-3 ("Treatment Progress") at 12 ("12/7/21 entry"). In any event, there is no allegation showing that Plaintiff's claim that he will be forced to violate his religious tenets goes beyond mere speculation.  In this case, injunctive relief would have no basis.  See Ex Parte Young, 209 U.S. 123 (1908) (to proceed,

a claim for injunctive relief must allege an ongoing violation of federal law for which prospective relief is sought).

To the extent that injunctive relief claims are directed at Fishkill Defendants, such claims are moot, as Plaintiff is gone from that facility.  Moreover, to the extent that he claims as to other Defendants that the outcome of his participation in the program may have an adverse effect on him because of his religious beliefs, his claims are unripe.[3]

As another federal district court held in a similar case, <u>Lando v. Annucci</u>, No. 18-CV-1472 2021 WL 1131475, at *3 (NDNY, Mar. 24, 2021), the injunctive relief claims, "as currently pled," were "not ripe for review. Ripeness is intended to avoid the 'premature adjudication' of abstract disagreements." <u>Id.</u> (citing <u>National Organization for Marriage, Inc. v. Walsh</u>, 714 F.3d 682, 687 (2d Cir. 2013)).  At this point, and as pleaded, Plaintiff's claims present at best only a hypothetical. "To be justiciable, a cause of action must be ripe – it must present a real, substantial controversy, not a mere hypothetical question." <u>Id.</u>   As the Second Circuit held in <u>Auerbach v. Board of Education</u>, 136 F.3d 104, 108-09 (2d Cir. 1998), "[w]hen the events alleged in a plaintiff's cause of action have not yet occurred, a federal court is precluded from exercising subject matter jurisdiction because a real case or controversy does not exist for purposes of Article III."  On the record on this motion, there is not yet a justiciable case or controversy.  <u>See</u>, <u>e. g.</u>, <u>Krull v. Oey</u>, 805 Fed. Appx. 73 (2d. Cir. 2020).

Plaintiff's injunctive relief claims should be dismissed as moot, unripe, or baseless, as set forth below.

---

[3]  This Court denied Plaintiff's motion for preliminary injunctive relief on June 30, 2021 and his renewed motion for the same relief on September 14, 2021 on grounds that he did not establish a likelihood of success on the merits or demonstrate irreparable harm if such an injunction did not issue.  <u>See</u> ECF #3; ECF #26.

**B.**    <u>**Plaintiff's Free Exercise Claims Fail**</u>

Plaintiff's First Amendment free exercise claims should be dismissed on several grounds. First, even assuming that Plaintiff holds sincere beliefs, he has not alleged that those beliefs were, in fact, "substantially burdened." Second, even if Plaintiff's beliefs were substantially burdened, the allegations of the Complaint itself show that Defendants' actions were both rational and justified by legitimate penological interests.  Finally, even if the Court could deem Plaintiff's allegations to have plausibly alleged any claim, Plaintiff's monetary damages claims must be dismissed as against Defendants whose personal involvement Plaintiff has failed to allege.

**First Amendment Legal Standard**

While prisoners "do not abandon their constitutional rights at the prison door," courts recognize that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 274 (2d Cir.2006) (quoting <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987) (quoting <u>Price v. Johnson,</u> 334 U.S. 266, 285 (1948))).  Accordingly, "[t]o prevail on a First Amendment claim, a plaintiff must show that he has a sincerely held religious belief, that it was *substantially* burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest." <u>Barnes v. Furman</u>, 629 F. App'x (2d Cir. 2015) (emphasis added) (citing <u>Holland v. Goord</u>, 758 F. 3d 215, 220-23 (2d Cir. 2014). Moreover, not every burden is a substantial burden.  <u>See</u> <u>Gill v. DeFrank</u>, No. 98-CV-7851, 2000 WL 897152, at *1, (S.D.N.Y. July 6, 2000), <u>aff'd</u> 8 Fed. App'x 35 (2d Cir. 2001).

Even where a plaintiff is able to show that sincerely held religious beliefs were substantially burdened, a challenged regulation or law still passes constitutional muster "'if it is reasonably related to legitimate penological interests.'" <u>Salahuddin</u>, 467 F.3d at 274 (quoting

O'Lone, 482 U.S. at 349 (quoting Turner v. Safley, 483 U.S. 78, 89 (1987)).  The "reasonableness test" is applied less restrictively than is ordinarily the case.  Turner, 482 U.S. at 89.  At this stage, defendants "bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct."  Salahuddin, 467 F.3d at 275.  Nevertheless, "the burden remains with the prisoner to show that these [articulated] concerns were irrational."  Id. (quoting Ford, 352 F.3d at 595 (internal quotation marks omitted) (citations omitted)).

The Second Circuit, citing the Supreme Court, has outlined four factors guiding courts' reasonableness determination:

> [1] whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; [2] whether prisoners have alternative means of exercising the burdened right; [3] the impact on guards, inmates, and prison resources of accommodating the right; and [4] the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.

Salahuddin, 467 F.3d at 274 (citing Turner, 482 U.S. at 90-91).  In this Circuit, courts begin by determining "whether the challenged regulation or action 'has a valid, rational connection to a legitimate governmental objective.'"  Vann v. Fischer, No. 11 Civ. 1958 (KPF), 2014 WL 4188077, at *9 (S.D.N.Y. Aug. 25, 2014) (quoting Salahuddin, 467 F.3d at 274).  Courts are to "accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (collecting authority); see also O'Lone, 482 U.S. at 353 (noting deference courts accord the judgment of prison officials, who are charged with the "formidable task" of running a prison).

In weighing the Turner factors, DOCCS has a compelling interest in implementing programs like the SOCTP.  The Second Circuit has recognized that under McKune v. Lile, 536 U.S. 24 (2002), the Supreme Court will uphold a sex offender treatment program like the SOCTP

as satisfying the Constitution in most contexts ("[a] sex-offender treatment program that requires disclosure of criminal conduct without guaranteeing immunity does not violate the Fifth Amendment's Self-incrimination Clause unless the consequences for non-disclosure *compel* the prisoner to make self-incriminating statements"). Krull v. Oey, 805 F. Appx. 73, 75 (2d Cir. 2020). In Krull, the Second Circuit remanded a Fifth Amendment challenge to the SOCTP to determine the extent to which "the prospect of 'an increased SORA risk level' compels self-incrimination." Krull v. Annucci, 2022 WL 44775, No. 21-CV-03395 (S.D.N.Y. Jan. 5, 2022).[4] Plaintiff here does not challenge the SOCTP on Fifth Amendment self-incrimination grounds. The Supreme Court and the Second Circuit have not addressed a First Amendment or RLUIPA challenge to the SOCTP.

1.      **Plaintiff's Religious Beliefs Have Not Been and Will Not Be Substantially Burdened By Participation In The SOCTP**

As set forth above, Plaintiff claims that he is not guilty of the crimes he was convicted of and that because his participation in the SOCTP allegedly requires that he admit his guilt, Defendants would compel him to be untruthful, thereby forcing him to violate his religious beliefs, an abridgement of his rights. While Plaintiff concedes that it is not unreasonable in general to require participation in the SOCTP for evaluating the timing and terms of release after a sentence, he argues here that such participation is unreasonable to the extent he is required to lie about his guilt in violation of his religious tenets. But as set forth above, and as the exhibits appended to the Complaint establish, Plaintiff is not required to admit guilt in order to participate. His beliefs are not burdened.

---

[4] Krull dealt with a claim by a former II that his Fifth Amendment right against self-incrimination had been violated by DOCCS' alleged policy of requiring IIs participating in the SOCTP to lie by admitting guilt for their crimes of conviction. The facts of that case differ from those herein as the plaintiff there had been removed from the SOCTP prior to being released from DOCCS.

The Supreme Court decision in <u>McKune</u> suggests that a prison's sex offender program requiring disclosure of criminal conduct without guaranteeing immunity does not necessarily violate the Fifth Amendment, but that "unconstitutional compulsion involves …Courts [in the determination of] whether the consequences of an inmate's choice to remain silent are closer to the physical torture against which the Constitution clearly protects or the *de minimis* harms against which it does not." <u>McKune</u>, 536 U.S. at 41.  In the First Amendment context, courts addressing the issue have held that participation in the SOCTP does not substantially burden incarcerated individuals' exercise of religion.  <u>See</u> <u>Griffin v. Alexander</u>, No. 09-CV-1334, 2011 WL 4343199 (N.D.N.Y. Sept. 14, 2014) (dismissing Free Exercise and RLUIPA claims brought by a Jehovah's Witness who challenged the SOCTP and holding that "participation in the SOCTP was not a substantial burden on Griffin's exercise of his religion as he was not required to admit to the commission of any crime").  There is no First Amendment or RLUIPA precedent to the contrary. Plaintiff's religious exercise has not been substantially burdened.

2.　　　　　**Defendants' Actions Are Justified by Legitimate Penological Interests**

Even if Plaintiff's religious beliefs were burdened unconstitutionally, such a burden is justified because it advances DOCCS' legitimate penological interests.  <u>See</u> <u>e. g.</u>, <u>McKune</u>, 536 at 24.  Courts in this Circuit have found that the sort of compulsion the SOCTP requires does not, in most contexts, violate the Constitution.  <u>See Edwards v. Goord</u>, 362 Fed. App'x 195, 198 (2d Cir. 2010) (in rejecting a *habeas* challenge, the Circuit held that the SOCTP advanced legitimate State interests in protecting the public and did not violate rights against self-incrimination by conditioning good time credits and discretionary privileges on participation); <u>McChesney v. Hogan</u>, Nos. 08-CV-1186, 08-CV-1290, 2010 WL 1027443, at *7, (N.D.N.Y. Feb 26, 2010), report and recommendation adopted, 2010 WL 1037957 (N.D.N.Y. Mar. 18, 2010); <u>Adams v.</u>

Annucci, 2018 WL 4608216, at *8 (S.D.N.Y. Sept. 25, 2018).  Because the SOCTP strikes a reasonable balance between the accommodation of Plaintiff's beliefs and DOCCS' legitimate penological interests, there has been no First Amendment violation and such claims should be dismissed.

## C.      Defendants Have Not Violated Plaintiff's Rights Under RLUIPA

Pursuant to the stricter test for government action under RLUIPA, "religious exercise," "whether or not compelled by, or central to, a system of belief" (42 U.S.C. §2000cc-5 (7) (A)) is protected against government restriction unless the government establishes that it has a compelling interest in advancing such restriction and furthers that interest through the least restrictive means. Westchester Day School v. Village of Mamoroneck, 386 F. 3d 183 (2d Cir. 2004).  Defendants need only meet that burden in this case, however, if Plaintiff first establishes that DOCCS substantially burdens his core and sincerely-held religious exercise.

## 1.      DOCCS Policy Does Not Substantially Burden Plaintiff's Core Beliefs

Plaintiff cannot establish that his core beliefs have been "substantially burdened," which the Fifth Circuit concluded, citing to 146 Cong. Rec. S7776 (July 27, 2000), is demonstrated by any restriction which "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs."  Adkins v. Kaspar, 393 F. 3d 559, 567 (5th Cir. 2004).  The Seventh Circuit has heightened "substantial burden" to mean "one that necessarily bears direct, primary and fundamental responsibility for rendering religious exercise… effectively impracticable."  Civil Liberties for Urban Believers v. City of Chicago, 342 F. 3d 752, 761 (7th Cir. 2003).  See also Midrash Sephardi, Inc. v. Town of Surfside, 366 F. 3d 1214, 1227 (11th Cir. 2005) ("substantial burden" means more than "inconvenience," and must coercively prevent or force religious exercise), cited in Murphy v. New Milford Zoning Commission, 402 F. 3d 342, 350

14

(2d Cir. 2005).  As set forth above, Plaintiff does not plead that participation in the SOCTP renders his religious exercise "effectively impracticable," and thus he cannot establish any significant RLUIPA violations.  Even accepting that his core beliefs prohibit him from admitting guilt when he sincerely believes he is not guilty of the crimes for which he was convicted and sentenced (and for which he expressed regret in open court at sentencing), the SOCTP does not compel him to admit guilt, as recognized in the case law.

2.     **DOCCS' Policy Is The Least Restrictive Means To Advance Its Compelling Interests**

Even if the SOCTP did burden Plaintiff in violation of RLUIPA, DOCCS has a compelling interest in fostering policies that require participation in sex offender counseling programming in its prisons.  And in advancing that compelling interest, as the Supreme Court noted, DOCCS should be granted deference in matters of prison security and administration.  Cutter v. Wilkinson, 125 S. Ct. 2113, 2122 (2005) (stating that RLUIPA should not be read to "elevate accommodation of religious observances over an institution's need to maintain order and safety").  The SOCTP provides the least restrictive requirements, as the program does not require admissions of guilt, but rather only the willingness to discuss the facts and circumstances giving rise to an individual's convictions.  Accordingly, Plaintiff's RLUIPA claims should be dismissed.

**POINT III**
**PLAINTIFF'S EQUAL PROTECTION RIGHTS HAVE NOT BEEN VIOLATED**

Plaintiff claims that the SOCTP violates the Equal Protection Clause because as a Hindu he is being treated differently from others belonging to other religious groups.  He is not treated differently and he offers no evidence, let alone any allegation, of different treatment from any other specific group.  While City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985) notes that the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike," not every classification is prohibited. Government actors simply must

15

"refrain" from treating differently persons who are in all relevant respects alike."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).  Plaintiff's claim that Defendants have not accommodated his religious practices equally with similarly situated religious groups fails – all such groups are equally subject to the SOCTP requirements.

## A.   No Similarly Situated Group Is Treated More Favorably Than Plaintiff's

Plaintiff has not plausibly alleged that a similarly situated group of sex offenders is treated differently from those who are Hindu, and to the extent that he seeks comparison with sex offenders who profess no or different religious tenets (and presumably could lie without compunction), his comparison falls outside the Equal Protection Clause.  Plaintiff fails to identify with sufficient specificity any better-treated similarly situated group, and the Supreme Court has held that the Constitution does not provide that every religious sect or group within a prison – however few in number – must have identical facilities or personnel.  See e. g., Beto v. Cruz, 405 U.S. 319, 322, at n.2 (1972). Plaintiff's allegation that Hindu inmates are treated differently, even if it could be credited (as if there are religions that do not condemn lying), does not give rise to an Equal Protection claim.

## B.   DOCCS Policies Withstand Rational Basis Review

Even if Plaintiff could establish that a similarly-situated group was treated differently from the group to which he belongs, Plaintiff cannot demonstrate that DOCCS policy is without rational basis.  Alleged religious discrimination on Equal Protection grounds is subject to rational basis scrutiny.  Locke v. Davey, 540 U.S. 712, 721 (2004).  Because DOCCS policies satisfy the First Amendment, the rational basis standard, deferential to state agency decisions, is applied. See Weinstein v. Albright, 261 F. 3d 127, 140 (2d Cir. 2001).  This Court need not "pass judgment" on the wisdom of any DOCCS policy in this context, but rather only on the "plausible reasons for"

the policies.  General Media Communication, Inc v. Cohen, 131 F. 3d 273, 286 (2d Cir. 1997) cert. denied, 524 U.S. 951 (1998); see also Vacco v. Quill, 521 U.S, 793, 800 (1997).  Any "equal protection challenge to a government classification must be denied if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  Weinstein, 261 F. 3d at 140.  Given the rational bases articulated above for the SOCTP, Plaintiff's Equal Protection claim must fail.

Finally, no Defendant has been alleged to have had the requisite discriminatory animus to state an Equal Protection claim.  As the Second Circuit has pointed out, "[t]o prove an equal protection violation, claimants must prove purposeful discrimination directed at an identifiable or suspect class."  Giano v. Goord, 54 F. 3d at 1057.  Each Defendant must be personally involved for liability to attach, and "it is not enough for the defendant simply to be a 'policy maker' at the time the unconstitutional events occur." Cuocco v. Moritsugu,  222 F. 3d 99, 109 (2d Cir. 2000).

In sum, as a result of the foregoing, Plaintiff's Equal Protection claim should be dismissed.[5]

### POINT IV
### PLAINTIFF FAILS TO STATE A CAUSE OF ACTION THAT HIS RIGHTS WERE VIOLATED WHEN HIS SOCTP RISK DESIGNATION WAS CHANGED

Plaintiff alleges that it was improper for the Defendants to change his SOCTP risk level determination from low to moderate, because it is forcing him to participate in a version of the program that is six months longer than the version he would have had to complete had be retained his low risk level designation. According to Plaintiff, this change violated his rights to due process under the Fifth and Fourteenth Amendments. In addition, Plaintiff asserts that DOCCS elevated

---

[5] To the extent Plaintiff argues that the requirements of the SOCTP violate his due process rights under the Fifth Amendment, such claim must fail as the Fifth Amendment does not apply to state actors. See Drew v. City of New York, No. 18 Civ. 011709, 2021 WL 1226413, at * 6 (S.D.N.Y. Mar. 31, 2021). In addition, while Plaintiff appears to argue that the requirements of the SOCTP violate his procedural and substantive due process rights under the Fourteenth Amendment, it is not clear from the face of the Complaint how that is the case.

his risk level in order to make it eligible to receive additional federal funds for the SOCTP program in violation of RICO and the False Claims Act. Both claims are wholly conclusory and lack merit, and therefore, should be dismissed.

To make out a procedural due process claim under the Fourteenth Amendment, a Plaintiff must be able to demonstrate, "(1) that Defendants deprived him of a cognizable interest in 'life, liberty, or property,' (2) without affording him constitutionally sufficient process." Proctor v. Leclaire, 846 F.3d 597, 608 (2d Cir. 2017).  Plaintiff is unable to make this showing because he cannot demonstrate that he has a liberty interest in taking the shorter, low risk, version of the SOCTP.  According to Plaintiff, he is scheduled to complete his current program sometime between July 31 and October 31, 2022. See Compl. ¶ 2. However, his earliest possible release date is not until May 15, 2024. Id. at 5 ("III- Prisoner Status"). Therefore, no additional time has been added to his sentence.

Plaintiff's Fourteenth Amendment substantive due process claim similarly fails. To demonstrate a violation of his rights, Plaintiff must "identify the constitutional right at stake," and then "must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Hurd v. Fredenburgh, 984 F.3d 1075,1087 (2d Cir. 2021) (quotation omitted).  Here, Defendants had a legitimate reason for the change in risk level determination – the "extreme violence and victim harm Tripathy displayed during the course of his offense." See Compl at Exh. H-11.  Addressing Plaintiff's argument that she should not have relied on the official record in reaching this determination (because it takes the side of Plaintiff's victim), Dr. Brotz noted that "[a]lthough [Tripathy] may contest the accuracy of this information, I cannot simply take his word that the record is inaccurate." Id.

Plaintiff's remaining claims should also be dismissed. He cannot demonstrate a due process violation under the Fifth Amendment because that Amendment does not apply to state actors. See Drew v. City of New York, No. 18 Civ. 011709, 2021 WL 1226413, at * 6 (S.D.N.Y. Mar. 31, 2021). Finally, Plaintiff's claims under RICO and the False Claims Act are wholly conclusory and must be dismissed.

**POINT V**
**PLANITFF'S RETALIATION CLAIMS MUST BE DISMSISED BECAUSE HE FAILED TO STATE A CLAIM AS TO THEM AND BECAUSE HE FAILED TO EXHAUST CERTAIN OF THEM**

Courts assess claims of retaliation with "skepticism and extreme care," as any action can appear retaliatory if framed in such a way. See Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001). Plaintiff must allege for a retaliation claim "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) (quoting Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002)). If the Plaintiff can make this showing, the Defendant must demonstrate a non-retaliatory motive for his or her actions. See Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir. 1998) (the "conclusion that the state action would have been taken in the absence of improper motives is readily drawn" in the prison context) (quotation omitted). Here, Plaintiff fails to make the necessary showing with respect to any of the four alleged acts of retaliation. See Compl. ¶ 14.

With respect to "Incident # 1," Plaintiff claims that Dr. Brotz issued a counseling memorandum to him because he improperly used the first names of staff members in his correspondence to them. However, Plaintiff does not dispute that he did so. Instead, he claims he was permitted to do so because he had obtained these names in response to a FOIL request

to DOCCS – he was not. See Compl. at ¶ 14 and Exh. F-1; Declaration of Joshua A. Becker

("Becker Decl.") ¶ 14. Thus, Dr. Brotz had a legitimate non-retaliatory reason for issuing the

counseling memorandum. Moreover, Plaintiff has failed to allege in what way issuance of the

counseling memorandum constituted an adverse action.

With respect to "Incident #2," Plaintiff claims that he was improperly issued a

"Disciplinary Ticket" by Dr. Brotz for assisting another II with his FOIL work. However,

according to Plaintiff, that Ticket was dismissed. See Compl. ¶ 14 and Exh. F-2; Becker Decl.

¶ 15. Plaintiff has failed to allege that he suffered any adverse action as a result of the issuance

of the Ticket. Therefore, this claim must be dismissed.

With respect to "Incident #3," Plaintiff alleges that Dr. Brotz arranged for his cell to be

searched and for certain of his legal papers to be confiscated. However, he acknowledges that

he was never provided any information as to why the search took place and who authorized

Officer Hycner to conduct the search. See Compl. ¶ 14 and Exh. F-3; Becker Decl. ¶ 16.

Plaintiff's attempt to tie Dr. Brotz to this cell search is wholly conclusory.

Regarding "Incident #4," Dr. Brotz had a legitimate non-retaliatory reason for changing

Plaintiff's cell – to separate herself from the Plaintiff.  By transferring Plaintiff to a different

housing unit, he was no longer be assigned to groups facilitated by Dr. Brotz, with whom he

had issues. See Compl. ¶ 14; Exh. F-4; Becker Decl. ¶ 17 and Exh. D (Grievance COL-0011-

22), at Case History and Record.

Moreover, Plaintiff failed to exhaust his administrative remedies with respect to Incidents

3 and 4 before filing the Complaint. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §

1997e, requires incarcerated individuals to exhaust *all* available administrative remedies *before*

an action is brought alleging unlawful prison conditions under §1983 or any other federal law

in federal court. § 1997e(a); <u>Amaker v. Lee</u>, No. 13-cv-5292(NSR), 2019 WL 1978612, at *4 (S.D.N.Y. May 3, 2019); <u>Hicks v. Adams</u>, 692 F. App'x 647, 648 (2d Cir. 2017) ([w]hen available administrative remedies are not fully and properly exhausted prior to filing suit, the action must be dismissed); Declaration of Joshua A. Becker at ¶¶ 3-12.

With respect to Incident # 3, Plaintiff filed his Amended Complaint on May 2, 2022, [6] which was prior to the Superintendent issuing a decision on Plaintiff's grievance on May 30, 2022. <u>See</u> Compl. ¶ 14 and Exh. F-3; Declaration of Joshua A. Becker at ¶ 16 and Exh. C (Grievance COL-0139-22). Moreover, CORC has not yet issued a decision on Plaintiff's appeal from the Superintendent's decision, which it only first received on June 12, 2022. Declaration of Joshua A. Becker at ¶ 16.  As CORC has thirty days to issue a response from when it receives an appeal, its response to Plaintiff's appeal is not due until July 12, 2022. <u>See</u> Declaration of Joshua A. Becker at ¶¶ 10 and 16.  Regarding Incident #4, Plaintiff's grievance (COL-0146-22) was only first received by the grievance office on May 2, 2022, the same day he filed this lawsuit. <u>See</u> Declaration of Joshua A. Becker at ¶ 17 and Exh. D.

Thus, because of the foregoing, Plaintiff's retaliation claims must be dismissed.

## POINT VI
## <u>THE ELEVENTH AMENDMENT BARS OFFICIAL CAPACITY DAMAGES CLAIMS</u>

Plaintiff's claims for damages against the Defendants in their official capacity are barred by the Eleventh Amendment.  <u>See</u> <u>Seminole Tribe of Florida</u>, 517 U.S. 44 (1996); <u>Farid v. Smith</u>, 850 F.2d 917, 921 (2d Cir. 1988).

---

[6] "Under the prison mailbox rule, a *pro se* prisoner's complaint is deemed filed upon its delivery to prison authorities for transmittal to the district court." <u>Sides v. Paolano</u>, 782 Fed. Appx. 49, 50 (2d Cir. 2019). Here, while the Complaint was filed by the clerk on May 6, 2022, the date on the Complaint is May 2, 2022, which is presumably when Plaintiff mailed it to the court.

**POINT VII**
**DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

In any event, at a minimum, Defendants are entitled to qualified immunity, as public officials are shielded "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Moreover, "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (internal citation omitted).[7]  Defendants are entitled to qualified immunity "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir. 2001).

In determining whether a defendant violated clearly established rights, the right must be defined with sufficient specificity, Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011), as a "right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful." Williams v. King, 56 F. Supp. 3d 308, 324 (S.D.N.Y. 2014) (internal citations and quotation marks omitted) (alterations in original).

Defendants are entitled to qualified immunity on Plaintiffs' claims as there is no Supreme Court or Second Circuit precedent that holds that the SOCTP violates the Constitution, or that, as applied to Plaintiff, the SOCTP unlawfully infringes on religious exercise in violation of the First

---

[7] The scope of the defense has been appropriately defined by the Supreme Court as one providing "protection to all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

Amendment, RLUIPA, or the Equal Protection Clause.  As observed by the district court in Griffin, there is no clearly established law of which a reasonable DOCCS official would be aware that suggests that the SOCTP, as applied in these circumstances to an individual professing to practice the Hindu religion, would unlawfully abridge Plaintiff's First Amendment, RLUIPA or Equal Protection rights.  Nor is there any precedent prohibiting a DOCCS official from elevating the risk level of an II enrolled in the SOCTP based on the violent nature of that II's crimes of conviction.

Thus, Plaintiff's claims for damages – even nominal damages – must be dismissed on grounds of qualified immunity.

**POINT VIII**
**THE CLAIMS AGAINST THE NON-FISHKILL DEFENDANTS SHOULD BE**
**DISMISSED OR SEVERED AND TRANSFERRED TO THE WDNY OR NDNY**

If the Court grants this motion and dismisses the claims against the Fishkill Defendants on the basis of lack of personal involvement, see supra Point I,  the remaining claims should either be dismissed, pursuant to Fed. R. Civ .P. 12(b)(3) and 28 U.S.C. § 1406(a), or transferred to either the WDNY or NDNY, pursuant to 28 U.S.C. § 1406(a), because venue is not proper in the SDNY as all transactions and occurrences involving the remaining Defendants took place in either the WDNY or NDNY.

A civil action may be brought in: "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." Jane Stone v. Annucci, No. 20 Civ. 1326(RA), 2021 WL 4463033, at 13 (S.D.N.Y. Sept. 28, 2021) (citing 28

U.S.C. § 1391(b)).  "In a case involving multiple claims, the plaintiff must show that venue is proper for each claim asserted." United States EPA ex. rel. McKeown v. Port Authority, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001), aff'd on district court's opinion, 23 Fed. Appx. 81 (2d Cir. 2001), cert. denied, 535 U.S. 1079 (2002).

Pursuant to 28 U.S.C. § 1406(a), "when an action has not been brought in an appropriate venue, a district court may either dismiss the claim 'or if it be in the interest of justice, transfer [it] to any district or division in which it could have been brought.'" Jane Stone, 2021 WL 4463033, at 14 (quoting Gonzalez v. Hasty, 651 F.3d 318, 324 (2d Cir. 2011)).

A court considers the following factors to determine whether a case should be transferred: "(1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." Id. at * 27. The "list of factors is not exhaustive, . . . and [t]here is no rigid formula for balancing these factors and no single one of them is determinative." Id. (quotation omitted). Instead, "weighing the balance is essentially an equitable task left to the Court's discretion." Id. (quotation omitted). The "party requesting transfer carries the burden of making out a strong case for transfer," and courts "have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion." Id. (quotation omitted).

Here, all of the factors weigh in favor of transfer as none of the remaining claims are alleged to have occurred in the SDNY and none of the remaining Defendants are alleged to have worked in the SDNY or reside there. For example, the SDNY would not be the most convenient forum for

either the Defendants (or witnesses) who work at Collins (located in Erie County in the WDNY) or DOCCS' Central Office in Albany (located in the NDNY).  See Dickerson v. Novartis Corp., 315 F.R.D. 18, 27 (S.D.N.Y. 2016) (Courts "typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer.") (quotation omitted). Moreover, none of the operative facts took place in the SDNY. See Dickerson v. Novartis Corp., 315 F.R.D. at *30 (quotation omitted) (the "location of operative facts is a primary factor in determining a § 1404(a) motion to transfer").

For all of the foregoing reasons, the remaining claims should be dismissed or transferred to either the WDNY or NDNY.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court grant their Motion to Dismiss the Complaint in its entirety, or alternatively, as to any surviving claims, transfer the action to either the WDNY or NDNY.

Dated: New York, New York
      June 27, 2022

                                      LETITIA JAMES
                                      Attorney General of the
                                      State of New York
                                      Attorney for Defendants
                                      By:

                                      /s/ Neil Shevlin_____
                                      Neil Shevlin
                                      Assistant Attorneys General
                                      28 Liberty, 18th Floor
                                      New York, New York 10005
                                      (212) 416-8561
                                      Neil.Shevlin@ag.ny.gov